IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONY LAM, Individually and as | § | |
| Co-Trustee of Judy Chau | § | |
| Revocable Trust; JUDY CHAU, | § | |
| Individually and as Co-Trustee | § | |
| of Judy Chau Revocable Trust; | § | |
| and JUDY CHAU REVOCABLE TRUST, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-3041 |
| | § | |
| ALPHA REALTORS, INC., | § | |
| JANE NGA DUNG NGUYEN d/b/a | § | |
| ALPHA FINANCIAL NETWORK, | § | |
| JANE NGA DUNG NGUYEN, | § | |
| Individually, QUYNH LE, | § | |
| Individually, and MURKA, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Tony Lam, Individually and as Co-Trustee of Judy Chau
Revocable Trust, Judy Chau, Individually and as Co-Trustee of Judy
Chau Revocable Trust, and the Judy Chau Revocable Trust (the "Chau
Trust") (collectively, "Lam and Chau") bring this action against
Alpha Realtors, Inc. ("Alpha Realtors"), Jane Nga Dung Nguyen d/b/a
Alpha Financial Network ("Alpha Financial"), Jane Nga Dung Nguyen,
Individually, Quynh Le, Individually,[1] and Murka, Inc. ("Murka")

---

[1]Alpha Realtors, Alpha Financial, and Nguyen will collectively
be referred to as "Alpha."  Although Nguyen and Alpha Realtors are
two separate defendants in this action, the court uses "Nguyen" and
"Alpha" interchangeably as Nguyen is the sole shareholder of Alpha
Realtors.

alleging breach of contract, fraud, breach of fiduciary duty, and violations of Texas statute concerning the alleged mismanagement of and misrepresentations about several commercial real estate properties in Houston, Texas.  Pending before the court are Alpha Defendants' Motion for Partial Summary Judgment ("Alpha's Motion") (Docket Entry No. 38), Plaintiffs' Motion for Partial Summary Judgment on Fiduciary Claim Related to Real Estate Broker Intermediary Failure ("Plaintiffs' Fiduciary-Duty Motion") (Docket Entry No. 39), Plaintiffs' Motion for Partial Summary Judgment on Chapter 62 Claim ("Plaintiffs' Chapter 62 Motion") (Docket Entry No. 40), and Plaintiffs' Motion for Voluntary Dismissal of Certain Claims Against Alpha Defendants Without Prejudice ("Plaintiffs' Motion for Dismissal") (Docket Entry No. 59).  For the reasons explained below, the court will deny Plaintiffs' Fiduciary-Duty Motion and will deny in part and grant in part Alpha's Motion, Plaintiffs' Chapter 62 Motion, and Plaintiffs' Motion for Dismissal."

## I.  Factual and Procedural Background

This action involves alleged misconduct relating to the acquisition and management of several commercial real estate properties in Houston, Texas.  Plaintiffs Tony Lam and Judy Chau are United States citizens currently residing in Thailand, and they are co-trustees and co-beneficiaries of the Chau Trust.[2]  The Chau

---

[2]Plaintiffs' First Amended Complaint ("Complaint"), Docket Entry No. 22, ¶¶ 3-5.

Trust is a trust created under Hawaii state law.[3]  Defendant Alpha Realtors is a Texas corporation engaged in the business of brokering commercial real estate transactions.[4]  Defendant Alpha Financial was a Texas sole proprietorship operated by Nguyen at all times relevant to this action.[5]  Defendants Jane Nga Dung Nguyen and Quynh Le are Texas residents and worked for Alpha Realtors at all times relevant to this action.[6]  Defendant Murka, Inc. is a Texas corporation.[7]

## A.   The Real Estate Transactions

In March of 2006 Lam and Chau sold investment property they owned in Hawaii, planning to reinvest the proceeds in various business and investment properties in Houston as part of a tax-deferred Section 1031 exchange.[8]  To qualify for § 1031's benefits, Lam and Chau had 45 days from the closing date of the Hawaii sale

---

[3] Id. ¶ 5.

[4] Alpha's Motion, Docket Entry No. 38, ¶ 6.

[5] Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 3.

[6] Complaint, Docket Entry No. 22, ¶¶ 8-9.

[7] Id. ¶ 10.

[8] Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response and Memorandum of Law in Opposition to Alpha Defendants' Motion for Partial Summary Judgment ("Plaintiffs' Response"), Docket Entry No. 49, ¶¶ 2-3.  A "Section 1031 exchange" occurs when a taxpayer exchanges property held for productive use in business or for investment solely for qualified, like-kind property, allowing the taxpayer to recognize no taxable gain or loss.  26 U.S.C. § 1031 (2006).

(until May 1, 2006) to identify replacement properties, and 180 days from the closing date (until September 13, 2006) to acquire the replacement properties.[9]  After paying off the mortgage, Lam and Chau had $1,969,638.12 from the Hawaii sale to invest in replacement properties.[10]  Lam chose to invest in Houston commercial real estate because he believed the Houston market offered a relatively high rate of return.[11]

A few months before the Hawaii sale, Lam decided to explore the Houston market with the assistance of Houston real estate brokers.[12]  The parties disagree about how Lam portrayed his prior experience in commercial real estate.   Lam explains that he previously had owned several businesses but had invested in only one commercial real estate property before purchasing the Houston properties.[13]   The Alpha defendants allege that Lam "represented himself to be an experienced real estate investor."[14]

------

[9]26 U.S.C. § 1031(a)(3); Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 2.

[10]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶¶ 2-3; Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 24:6-25.

[11]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 25:10-26:10.

[12]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 4.

[13]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 10:3-13:20; 22:17-22.

[14]Alpha's Motion, Docket Entry No. 38, ¶ 7.

Lam located Houston-based Alpha Realtors on a website called Loopnet.com and contacted its representative, Jane Nguyen, to discuss his investment plan.[15] Lam states that he retained Alpha Realtors in part because Nguyen, like Lam, was Vietnamese; and Lam wanted to work with someone who could speak his language and appreciate how the Vietnamese culture influenced the way he conducted business.[16] After a few weeks of e-mail and telephone correspondence, Lam sent links of several Houston properties he had researched to Alpha so Nguyen could review them.[17] Quynh Le also worked for Alpha at that time.[18]

Lam and Chau then flew to Houston for a three-day visit to look at several properties for which Nguyen was the listing agent.[19] Lam asserts that Nguyen made representations to him on the phone and during his first visit to Houston concerning how the commissions would be divided and how the properties would be

---

[15]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 4.

[16]Id. ¶ 5.

[17]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 10.

[18]Id. ¶ 3.

[19]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 4.

managed.[20]   Nguyen disputes the existence of some of these representations and disputes the content of others.[21]

On May 1, 2006, to keep within the bounds of Section 1031, Lam and Chau identified five Houston properties as candidates for replacement properties:  (1) unimproved real property located at 12771 Beechnut ("Beechnut"); (2) the property and improvements located at 11611 Bissonnet ("Bissonnet"); (3) the property and improvements located at 8540 Broadway ("Broadway"); (4) the property and improvements located at 5999 W. 34th St. ("W. 34th St."); and (5) the property, improvements, and business located at 16515 Longenbaugh Drive ("Longenbaugh").[22]   Between January and September of 2006, Lam and Chau, with the assistance of Alpha Realtors, purchased all five of these properties using funds from both personal accounts and bank loans.

1.   The Beechnut Transaction

On January 26, 2006, Lam and Chau contracted to purchase the Beechnut Property for $480,000.[23]   Lam and Chau closed on the

---

[20]Complaint, Docket Entry No. 22, ¶ 59; Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 6; Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 40:23-41:24.

[21]See Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶¶ 7-17.

[22]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶¶ 7-8, 11-12, 17; Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 35:5-10.

[23]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 13.

property on June 7, 2006.[24]  The two real estate brokers, Nguyen (representing the plaintiffs) and Evan Howell, Inc. (representing the seller), each received a $14,400 commission at closing.[25] Nguyen states in her affidavit that she managed the Beechnut property under an oral agreement with Lam and Chau.[26]

In August of 2006 Lam and Chau contracted with an architect and contractor, Doanh Hoang Dinh, to design and build a business park on the Beechnut property.[27]  Lam asserts that he paid around $3 million for the property and business park.[28]  The contract stated that substantial completion of the project was to be achieved no later than February 28, 2007.[29]  Nguyen states that to fund the business-park project, Lam and Chau borrowed $2,200,000 from Wachovia Bank.[30]

Lam and Chau allege that before they purchased the Beechnut property and secured financing for improvements to the property,

---

[24]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 11.

[25]Id.

[26]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 8.

[27]Id. ¶ 13; Beechnut Standard Form of Agreement, Exhibit 15 to Alpha's Motion, Docket Entry No. 38, p. 1.

[28]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 99:9–20.

[29]Beechnut Standard Form of Agreement, Exhibit 15 to Alpha's Motion, Docket Entry No. 38, p. 2.

[30]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 13.

Nguyen represented that she would assist them in finding prospective tenants and that she had already secured seven letters of commitment and five pre-leases from prospective tenants.[31]  Lam and Chau also allege that Nguyen and Le forged Lam's signature and initials on these documents.[32]  Nguyen states that Alpha agreed at Lam's request to help find prospective tenants so Lam could secure financing.[33]  Nguyen also states that Lam asked Alpha to sign the pre-leases and letters of commitment on his behalf since he did not live in Texas.[34]  According to Nguyen, the business park was not completed on schedule; and by the time it was completed, Alpha was unable to convince any of the prospective tenants to move in.[35]

2.   The Bissonnet Transaction

On February 10, 2006, Lam and Chau contracted to buy the Bissonnet property for $600,000.[36]  Lam and Chau closed on the property on April 12, 2006.[37]  Nguyen served as the intermediary

---

[31]Complaint, Docket Entry No. 22, ¶ 68.

[32]Id. ¶ 78.

[33]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 19.

[34]Id. ¶¶ 21–22.

[35]Id. ¶ 24.

[36]Bissonnet Commercial Contract, Exhibit 8 to Alpha's Motion, Docket Entry No. 38, p. 1; Financing Addendum for Bissonnet property, Exhibit 8 to Alpha's Motion, Docket Entry No. 38, p. 3.

[37]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 7.

real estate broker between Lam and Chau and the sellers, a position that Lam states Nguyen did not fully disclose before the transaction occurred.[38]  Lam states that Nguyen received a portion of the sales proceeds.[39]

On May 30, 2006, after Section 1031's identification period had lapsed, Lam and Chau entered into a Commercial Property Management Agreement with Alpha.[40]  The agreement, signed by both parties, provides that Tony Lam, the "Owner," appoints Alpha (Nguyen), the "Broker," as the sole and exclusive agent of the property to "manage and lease" the property.[41]  The agreement also includes the scope of the broker's authority, representations and promises to which Lam agreed, and details regarding insurance, fees, liability/indemnification, and attorneys' fees.[42]

The section titled "BROKER'S FEES" provides: (1) each month, Lam will pay Nguyen a management fee of 5% of "the gross monthly rents collected that month"; (2) each time the property is leased to a new tenant, Lam will pay Nguyen a leasing fee equal to 5% of "the gross to be paid under the lease"; (3) each time a tenant

---

[38]Id.

[39]Id.

[40]Id. ¶ 9; Bissonnet Management Agreement, Exhibit C to Plaintiffs' Response, Docket Entry No. 49, p. 1.

[41]Bissonnet Management Agreement, Exhibit C to Plaintiffs' Response, Docket Entry No. 49, p. 1.

[42]Id. at 2-8.

renews or extends a lease, Lam will pay Nguyen a renewal or extension fee equal to 2% of "the gross rents to be paid under the renewal or extension"; (4) each time Nguyen arranges for the property to be repaired, maintained, redecorated, or altered as permitted by the agreement, Lam will pay Nguyen a service fee equal to 3% of "the total cost of each repair, maintenance, alteration, or redecoration"; (5) if Lam sells the property to a tenant who occupied the property or to a non-tenant buyer who Nguyen procures, Lam will pay Nguyen a fee equal to 2% of "the sales price."[43]  Lam states that the agreement contradicts Nguyen's prior representation that she would manage the Bissonnet property at no charge for five years.[44]

3.   The Broadway Transaction

On February 12, 2006, Lam and Chau entered into an earnest-money contract to purchase the Broadway property for $775,565.[45] Lam and Chau closed on the property on March 31, 2006, and Alpha agreed to evenly share the commission with Lam and Chau.[46]   On

---

[43]Id. at 5–7.  The court notes that while Nguyen initialed each of pages five through seven, Lam only initialed page five.  Both parties signed the last page of the agreement.

[44]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 9.

[45]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 14; Broadway Commercial Earnest Money Contract, Exhibit 9 to Alpha's Motion, Docket Entry No. 38, p. 1.

[46]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 14.

-10-

May 30, 2006, Lam and Chau entered into a Commercial Property Management Agreement for the Broadway property that was similar to the Bissonnet Commercial Property Management Agreement.[47]   The Broadway dealings are, for the most part, not at issue in this action.

    4.   <u>The W. 34th St. Transaction</u>

On March 1, 2006, Lam and Chau contracted to purchase the W. 34th St. property from PQ Investments, Inc. ("PQ Investments") for $1,250,000.[48]   Lam and Chau closed on the property on September 5, 2006,[49] and Lam's affidavit states that at closing Nguyen received a $35,074.32 commission.[50]   Plaintiffs financed $875,000 of the purchase price with a loan from East West Bank.[51] Nguyen served as the intermediary real estate broker between Lam and Chau and the sellers, a position that Lam again states Nguyen did not fully disclose before the transaction occurred.[52]   Nguyen states in her affidavit that she managed the W. 34th St. property under an oral agreement with Lam and Chau.[53]

_____

[47] <u>Id.</u>

[48] <u>Id.</u> ¶ 15.

[49] <u>Id.</u>

[50] <u>Id.</u>

[51] <u>Id.</u>

[52] Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 17.

[53] Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 8.

Before purchasing the W. 34th St. property, Nguyen provided, and Lam and Chau reviewed, a "rent roll" for the property, which lists each tenant, the term of each tenant's lease, the monthly rent each tenant pays, and the annual income and expenses.[54]  The rent roll, which is undated and written on Alpha letterhead, showed that there were five tenants paying between $1,200 and $3,369 per month in rent, an annual gross income of $126,828, and annual expenses of $0.00.[55]  Nguyen acknowledges that the rent roll was prepared by her assistant, Lynn Dang, from information the seller provided orally, and that it contains "several errors," including an incorrect statement that the property had zero annual expenses.[56] Nguyen denies she ever intentionally misled Lam and Chau and states that Alpha merely passed on all of the financial information they received from PQ Investments.[57]

Lam and Chau claim that before closing they were given only one other income statement, which displayed annual expenses of $24,040, but annual net income of approximately $120,000.[58]  Nguyen

---

[54]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 18; Alpha 1547, Exhibit H to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 1.

[55]Alpha 1547, Exhibit H to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 1.

[56]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 30.

[57]Id. ¶¶ 29, 32.

[58]Lam 37, Exhibit I to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 1.

states that she provided Lam and Chau with two additional financial documents before they purchased the property. The first, entitled "PQ Investments, Inc. Income Statement for the Period Ended June 30, 2006," shows that the property had gross profits of $71,214, total operating expenses of $43,369, and a net income of $30,127.[59] The second, which also displays "PQ Investments, Inc." across the top, lists what appear to be property expenses incurred between January and July of 2006 that total over $20,000.[60] Lam states that the plaintiffs did not receive these latter two documents until PQ Investments' accountants transferred them to Lam and Chau after closing.[61] Nguyen states she was unaware of "any information that would have caused [her] to suspect that [PQ Investments'] information was inaccurate or unreliable."[62] After purchasing the W. 34th St. property, during the twelve-month period ending December 31, 2007, Lam and Chau experienced a total income of $98,260 and total expenses of $51,887.18, producing a net income of $46,372.82.[63]

---

[59]Lam 41, Exhibit J to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 1.

[60]Lam 42, Exhibit K to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 1.

[61]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 20.

[62]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 29.

[63]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 21.

-13-

A-1 Amusements, a tenant at the W. 34th St. property, gave notice "shortly before closing that it would vacate the property."[64] Nguyen states that to protect Lam and Chau from any loss resulting from A-1's departure, PQ Investments agreed to pay Lam and Chau a master lease in the amount of $80,856.[65]  Lam and Chau allege that Nguyen fraudulently represented that she would locate a replacement tenant to fill the space at a more favorable rent rate within a few months.[66]

Lam and Chau allege that Nguyen also represented that a parking lot "ancillary" to the W. 34th St. property was part of the property.[67]  Nguyen responds that they never discussed the parking lot and that Lam and Chau had in their possession documents showing the parking lot was leased from Reliant Energy.[68]

5.    The Longenbaugh Transaction

On May 1, 2006, Lam and Chau contracted to purchase the Longenbaugh property from Murka d/b/a Green Planet Cleaners for approximately $500,000.[69]  Lam and Chau closed on the property on

---

[64]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 15.

[65]Id.

[66]Complaint, Docket Entry No. 22, ¶ 95.

[67]Id. ¶ 96.

[68]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 33.

[69]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 12; Longenbaugh Settlement Statement, Exhibit E to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 1; Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 16.

August 29, 2006.[70]  Lam's affidavit states that Nguyen received a $30,000 commission at closing.[71]  The transaction entailed Lam and Chau assuming $400,000 of Murka's debt to United Central Bank and borrowing the remaining $100,000 from Nguyen, giving Nguyen a deed of trust on the property, improvements, and business.[72]  Lam and Chau allege that Nguyen proposed that they let Nguyen manage the dry-cleaning business free of charge until it experienced improved sales and then sell the business to reimburse Nguyen, leaving Lam and Chau with solely the investment property.[73]  Nguyen served as the intermediary real estate broker between Lam and Chau and the sellers, a position that Lam again states Nguyen did not fully disclose before the transaction occurred.[74]  Nguyen states that she managed the Longenbaugh property under an oral agreement with Lam and Chau,[75] but she denies she ever offered or agreed to manage the dry-cleaning business.[76]

Before purchasing the Longenbaugh property, Lam and Chau reviewed an income and expense statement for Green Planet Cleaners,

---

[70]Longenbaugh Purchase Agreement, Exhibit 12 to Alpha's Motion, Docket Entry No. 38, p. 1.

[71]Id.

[72]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 13.

[73]Id.

[74]Id. ¶ 14.

[75]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 8.

[76]Id. ¶ 27.

which showed that from January 1 to October 30, 2005, the business netted income totaling $38,011.[77]  Lam states that the statement was prepared by Nguyen's assistant and that Nguyen represented that the business's financial information was "good."[78]  Nguyen states that Alpha simply passed along the income information it received from Murka, that Alpha did not verify or vouch for the financial information, and that Alpha was unaware of any information that would have caused them to suspect that Murka's financial information was inaccurate or unreliable.[79]

Lam alleges that Nguyen represented she would be able to secure a cell phone tower lease with T-Mobile for more than $750 per month.[80]  Nguyen disputes that contention, and states that T-Mobile indeed offered to lease a portion of the property for the erection of a cell-phone tower but never offered to pay more than $500 per month.[81]

---

[77]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 15; Income Statement of Green Planet Cleaners, Exhibit M to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 1.

[78]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 15.

[79]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶¶ 25-26.

[80]Complaint, Docket Entry No. 22, ¶ 84.

[81]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 28.

-16-

Lam states that Nguyen and Alpha Realtors managed the business until Alpha was relieved of its duties in August of 2008.[82]   On May 8, 2009, Lam and Chau sold the dry-cleaning business for $275,000.[83]

**B.    Procedural History**

Lam and Chau commenced this action by filing their Original Complaint on September 19, 2009.[84]  They filed their First Amended Complaint on November 16, 2009 (the "Complaint").[85]  The Complaint alleges ten causes of action:

(1)  breach of the Bissonnet Management Agreement;

(2)  common law and statutory fraud for representations made concerning the Bissonnet, Beechnut, Longenbaugh, and W. 34th St. properties;

(3)  common law and statutory fraud for representations and actions concerning the Beechnut property;

(4)  civil conspiracy to commit common law and statutory fraud for actions and representations concerning the Beechnut property;

(5)  common law and statutory fraud concerning representations and actions concerning the Longenbaugh property;

(6)  common law and statutory fraud concerning representations and actions concerning the W. 34th St. Property;

---

[82]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 16.

[83]Id.

[84]Plaintiffs' Original Complaint, Docket Entry No. 1.

[85]Complaint, Docket Entry No. 22.

(7) violations of Chapter 12 of the Texas Civil
    Practice and Remedies Code for actions concerning
    the Broadway, Bissonnet and W. 34th St. properties;

(8) violations of the Texas Deceptive Trade Practices
    Act ("Texas DTPA");

(9) breach of fiduciary duty; and

(10) violations of Chapter 62 of the Texas Property Code
     for actions concerning the Broadway, Bissonnet, and
     W. 34th St. properties.

Alpha counterclaimed, alleging that Lam and Chau breached the management agreements covering the Bissonnet, Broadway, W. 34th St., and Longenbaugh properties, and also requested attorneys' fees and costs.[86]

On August 6, 2010, the Alpha defendants moved for partial summary judgment on Lam and Chau's fraud claims (causes of action two through six), Texas DTPA claim (cause of action eight), and fiduciary-duty claims (cause of action nine).[87]  Lam and Chau then moved for partial summary judgment on August 17, 2010, on some of their fiduciary-duty claims (cause of action nine), their Texas Property Code claim (cause of action ten), and Alpha's breach-of-contract counterclaim.[88]

---

[86]Defendants Alpha Realtors, Inc. and Alpha Financial Network's Answer, Affirmative Defenses, and Original Counterclaim ("Alpha's Answer"), Docket Entry No. 27, ¶¶ 37-66.

[87]Alpha's Motion, Docket Entry No. 38.

[88]Plaintiffs' Fiduciary-Duty Motion, Docket Entry No. 39; Plaintiffs' Chapter 62 Motion, Docket Entry No. 40.

## II.  <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes there is no genuine dispute about any material fact and the law entitles it to judgment. FED. R. CIV. P. 56(c)(2). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting <u>Celotex</u>, 106 S. Ct. at 2553–2554).

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  <u>Id.</u> (citing <u>Celotex</u>, 106

-19-

S. Ct. at 2553–2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000).

Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.  "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Id.

When a party chooses not to respond to all or part of a summary-judgment movant's validly supported motion, the court will not merely enter a "default" summary judgment, but it may accept as undisputed the facts the movant provides in support of its motion. See Eversley v. MBank Dallas, 843 F.2d 172, 173–74 (5th Cir. 1988) (finding that when the plaintiff failed to oppose the defendant's motion for summary judgment, the district court "did not err in granting the motion" because the motion established a *prima facie* showing of the defendant's entitlement to judgment).

-20-

### III.   <u>Lam and Chau's Fraud Claims</u>

**A.   Background**

Lam and Chau allege five causes of action based on either fraud or conspiracy to commit fraud, and each of these causes of action is based on one or more allegedly fraudulent representations.[89]   After Alpha moved for summary judgment on all five of these causes of action,[90] Lam and Chau sought voluntary dismissal without prejudice for some of their fraud claims:

> . . . [T]he results of discovery in this case have revealed, as highlighted by Defendants in their Motion for Partial Summary Judgment . . . that some of Plaintiffs' claims should be voluntarily dismissed without prejudice.   To the extent Plaintiffs' continued investigation of this case, and its preparation for trial, reveal that those claims should be re-instated, Plaintiffs will seek leave of this Court to amend their First Amended Complaint.[91]

Although Lam and Chau subsequently moved to voluntarily dismiss some of their fraud claims without prejudice,[92] Alpha argues that it is entitled to summary judgment on the claims and that they should not be dismissed without prejudice.[93]

The court concludes that all of Lam and Chau's fraud claims deserve summary-judgment consideration.   As stated in Fed. R. Civ.

---

[89]Complaint, Docket Entry No. 22, ¶¶ 57-102.

[90]Alpha's Motion, Docket Entry No. 38, ¶¶ 19-53.

[91]Plaintiffs' Response, Docket Entry No. 49, p. 2.

[92]Plaintiffs' Motion for Dismissal, Docket Entry No. 59.

[93]Alpha Defendants' Reply in Support of Motion for Partial Summary Judgment ("Alpha's Reply"), Docket Entry No. 52, p. 2.

P. 56(c)(2), the "judgment sought should be rendered if the
pleadings, the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law." The discovery period for this action ended July 30, 2010,
over a month before Lam and Chau filed their response to Alpha's
motion,[94] giving them ample time to compile whatever summary-
judgment evidence they deemed appropriate. Moreover, the record
contains summary-judgment evidence from both parties, including the
affidavits and depositions of both Lam and Nguyen.

**B.   Applicable Law**

The real estate properties in this action are located in
Texas, the parties both cite to Texas law, and no allegation
invokes the substantive law of another jurisdiction. Accordingly,
Texas law will govern the substantive claims in this action.

1.   <u>Common Law Fraud</u>

(a)  Generally

To prevail on a fraud claim under Texas common law a plaintiff
must prove that (1) the defendant made a representation to the
plaintiff; (2) the representation was material; (3) the
representation was false; (4) when the defendant made the
representation the defendant knew it was false or made the
representation recklessly and without knowledge of its truth;

---

[94]Docket Control Order, Docket Entry No. 24.

(5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff actually and justifiably relied on the representation; and (7) the representation caused the plaintiff injury.   Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001); Shandong Yinguang Chemical Industries Joint Stock Co. v. Potter, 607 F.3d 1029, 1032–33 (5th Cir. 2010).   A plaintiff's reliance on the defendant's false statement must be reasonable.   Ortiz v. Collins, 203 S.W.3d 414, 421 (Tex. App. — Houston [14th Dist.] 2006, no pet.).   Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001).   In a fraudulent inducement claim the elements of fraud must be established as they relate to an agreement between the parties. Id. at 798-99.

(b)  Fraudulent Promise

The Texas Supreme Court has stated that "[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986); Arete Partners, L.P. v. Gunnerman, 594 F.3d 390, 394 (5th Cir. 2010).   A party's intent is determined at the time the party made the representation; however, it may be inferred from the party's subsequent acts after the representation is made.

-23-

Id.  "Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made. However, that fact is a circumstance to be considered with other facts to establish intent." Spoljaric, 708 S.W.2d at 435; Arete Partners, 594 F.3d at 395.  The evidence must be relevant to the defendant's intent at the time the representation was made. Arete Partners, 594 F.3d at 395.

       (c)  Fraudulent Prediction or Opinion

Ordinarily, to be actionable for fraud a misrepresentation cannot be "a pure expression of opinion." Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 276 (Tex. 1995).  An opinion may constitute fraud, however, "if the speaker knows that it is false." Clardy Mfg. Co. v. Marine Midland Business Loans, 88 F.3d 347, 359-60 (5th Cir. 1996) (applying Texas law).  "An expression of an opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future." Id. (citing Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex. 1983)).

    2.  Statutory Fraud

For transactions involving real estate, the Texas Business and Commerce Code provides a separate avenue through which a plaintiff can recover on theory of fraud.  Section 27.01 states that a plaintiff must prove that either (1) there was a false representation of a past or existing material fact, made for the

purpose of inducing a person to enter into a contract, and relied
on by that person in entering into that contract, or (2) there was
a false promise to do an act that was made with the intention of
not fulfilling it, for the purpose of inducing that person to enter
into a contract, and relied on by that person in entering into that
contract.   Tex. Bus. & Com. Code Ann. § 27.01(a) (Vernon 1987).
Other than the fact that statutory fraud does not require proof of
knowledge or recklessness as a prerequisite to the recovery of
actual damages, the basic elements of Texas common law and
statutory fraud are the same.  Burleson State Bank v. Plunkett, 27
S.W.3d 605, 617 (Tex. App. — Waco 2000, pet. denied).  The court
will therefore not distinguish between these two types of fraud in
determining whether summary judgment is appropriate for Lam and
Chau's fraud claims.

## C.   Analysis

Lam and Chau allege five causes of action grounded in fraud or
conspiracy to commit fraud, and Alpha has moved for summary
judgment on all of them.  As stated above, even though Lam and Chau
have moved to voluntarily dismiss some of their claims, given the
completeness of the record and the adequate time both parties had
to conduct discovery, the court will consider all of Alpha's
summary-judgment arguments.  Each of the five fraud causes of
action will be discussed in turn.

1.   Lam and Chau's Allegation that Alpha Realtors and Nguyen
     Made Fraudulent Representations Concerning the Price and
     Management of Four of the Properties During Their Initial
     Discussions

Lam and Chau allege that Nguyen, on behalf of Alpha, made four fraudulent representations during their initial discussions about purchasing properties in Houston:  (1) that if Lam and Chau "purchased one or more of the properties shown to them, they would receive 50% of the commission on those sales," (2) that "Nguyen would manage the properties at no charge for five years," (3) that "Nguyen would maintain full occupancy at the properties," and (4) that "the value of the properties would increase under their management."[95]  Lam and Chau further allege that at the time these representations and promises were made, Alpha had "no intention of performing the promised management services," that "[n]one of these representations proved to be true," that the defendants either knew they were false or made the representations recklessly, that they were made with the intent of "inducing [Lam and Chau] to purchase the various properties," that Lam and Chau "did, in fact, act in reliance on these representations when they purchased the properties at issue," and that as a result, Lam and Chau suffered injury.[96]

---

[95]Complaint, Docket Entry No. 22, ¶ 59.

[96]Complaint, Docket Entry No. 22, ¶¶ 59-63.

-26-

(a)   Representation Concerning Lam and Chau's Share of the Commission

Lam and Chau allege that Nguyen fraudulently represented she would share 50% of her commission with them for properties she showed to them.[97]   Alpha argues that even assuming Nguyen made the representation, Lam and Chau as a matter of law could not have "actually and justifiably" relied on it for three of the four property purchases because of Lam's earlier acceptance of a 25% share of Nguyen's commission.[98]   Lam and Chau move to dismiss the claim without prejudice.[99]

Lam states in his deposition that Nguyen made the representation concerning the 50% split in commission during their first telephone conversation while Lam still resided in Hawaii.[100] Lam acknowledged there is no written documentation of this representation and that he did not ask Nguyen to confirm it in writing.[101]

Nguyen gives conflicting statements about when she discussed sharing her commission with Lam.   In her affidavit she states that

---

[97]Complaint, Docket Entry No. 22, ¶ 59.   Lam and Chau exclude dealings arising from the Broadway property in this as well as in most of their causes of action.

[98]Alpha's Motion, Docket Entry No. 38, ¶ 22.

[99]Plaintiffs' Response, Docket Entry No. 49, p. 3.

[100]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 41:1–43:1.

[101]Id.

when Lam first contacted her, he said "he wanted to split the broker's fees with [her] for any properties he purchased" and that she agreed to share "some portion" of her fees for properties Lam located and negotiated, but not for properties Alpha Realtors located and negotiated for him.[102]  She states that Lam "agreed that [they] would split the fees on a case-by-case basis."[103]  In her deposition Nguyen explains in greater detail how their commission-sharing negotiations were different for each property.[104]  But in her deposition Nguyen also indicates that the first time the commission-sharing subject surfaced was around March of 2006, when Lam proposed the idea before he closed on the Broadway property.[105]

Nguyen disputes that she agreed from the outset to share 50% of her commissions with Lam and Chau, but the record shows that Nguyen ended up sharing a portion of her commission with Lam and Chau for four of the five property transactions.  Nguyen closed on the five properties in the following order:  the Broadway property (March 31, 2006), the Bissonnet property (April 12, 2006), the Beechnut property (June 7, 2006), the Longenbaugh property (August 26, 2006), and the W. 34th St. Property (September 5,

---

[102]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 7.

[103]Id.

[104]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 144:15-25.

[105]Id. at 144:15-25.

2006).[106]  With respect to the Broadway property, Nguyen states that she gave Lam 50% of her commission.[107]   Broadway is the only property for which Nguyen states that they had a verbal pre-closing agreement to evenly split the commission, and Nguyen explains that this was because Lam was the one who located the Broadway property.[108]  With respect to the Bissonnet property, Nguyen states that although she initially told Lam he would receive none of the commission, she ultimately gave him around $9,000 (25% of the commission) after he protested.[109]  With respect to the Beechnut property, Nguyen states that she gave him 50% of the commission because Lam was the one who located the Beechnut property.[110]  With respect to the Longenbaugh property, Nguyen states that she did not give Lam and Chau any portion of the commission.[111]  Finally, with respect to the W. 34th St. property, Nguyen states that she gave Lam around 25% of the commission because Lam "remind[ed]" her and she didn't "want to have any hardship feeling[s]."[112]

---

[106]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶¶ 12–16.

[107]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 144:15–24.

[108]Id. at 144:15–25; 149:15–19.

[109]Id. at 147:12–148:17.

[110]Id. at 149:4–14.

[111]Id. at 145:5–19.

[112]Id. at 148:18–149:3.

Based on the chronology of these transactions, Alpha argues that even if Nguyen had previously agreed to evenly split her commission, Lam was "on notice" after the Bissonnet transaction — when Nguyen only gave Lam 25% of the commission — that Nguyen was not planning to honor the agreement.[113]

The court first concludes that with respect to the Bissonnet property, a genuine issue of fact exists as to whether Nguyen fraudulently represented that she would give Lam and Chau 50% of the commission.  The Broadway property was the only property Lam and Chau had closed on before the Bissonnet transaction, and the parties do not dispute that Nguyen verbally agreed to give Lam and Chau 50% of the Broadway commission.  If Nguyen represented from the outset, as Lam and Chau allege, that she would evenly share her commission, and if, as the parties agree, Nguyen gave them 50% of the commission for the Broadway property, a reasonable jury could conclude that Lam and Chau justifiably relied on her representation in acquiring the Bissonnet property.  Because a genuine dispute about a material fact exists with respect to the Bissonnet property, the court will not grant Alpha's motion for summary judgment on this claim, but will grant Lam and Chau's motion to dismiss this claim without prejudice.

With respect to the Beechnut property, the court concludes that Alpha is entitled to summary judgment.  A showing of fraud

---

[113]Alpha's Motion, Docket Entry No. 38, ¶ 22.

requires proof that the representation was false.  Because Nguyen states — and Lam and Chau do not dispute — that she gave Lam 50% of the commission for the Beechnut property, nothing in the record suggests that Nguyen's representation was false.  Alpha is thus entitled to summary judgment because there is no evidence to support an essential element of Lam and Chau's cause of action.

With respect to the Longenbaugh and W. 34th St. properties, the court concludes that a genuine fact issue exists as to whether Lam and Chau justifiably relied on Nguyen's representation that she would evenly split the commissions.  Alpha argues that since Lam and Chau received only 25% of the commission for the Bissonnet property, they cannot justify relying on Nguyen's prior representation for their subsequent purchases.[114]  The record shows, however, that the transaction immediately preceding the Longenbaugh transaction was for the Beechnut property, not the Bissonnet property.[115]  Nguyen states in her deposition that she gave Lam and Chau 50% of the commission for the Beechnut transaction.[116]  It therefore stands to reason that even though Lam and Chau had not collected 50% of the commission for every transaction, they could

---

[114]Alpha's Motion, Docket Entry No. 38, ¶ 22.

[115]See Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶¶ 12–16 (stating that Lam and Chau closed on the Bissonnet property on April 12, 2006, the Beechnut property on June 7, 2006, and the Longenbaugh property on August 26, 2006).

[116]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 149:4–14.

have reasonably assumed that the Bissonnet transaction was the exception and that their share of the commission for the Longenbaugh transaction would equal the 50% they received from the Beechnut transaction.   The record does not provide sufficient evidence for the court to conclude as a matter of law that Lam and Chau did not justifiably rely on Nguyen's representation.   See 1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital, 192 S.W.3d 20, 30 (Tex. App. — Houston [14th Dist.] 2005, pet. denied) ("In the context of common law fraud, courts have uniformly treated the issue of justifiable reliance as a question for the factfinder.").   Therefore, Lam and Chau's claim based on the commission-splitting representation will be dismissed without prejudice with respect to the Longenbaugh and W. 34th St. properties.

(b)   Representation Concerning Nguyen's Proposal to Manage the Properties

Lam and Chau allege that when they first contacted Nguyen, she represented that if they purchased a property she showed them, she would manage the property at no charge for five years.[117]

Alpha argues that it is entitled to summary judgment on this claim because (1) with respect to the Bissonnet property, Lam could not have "justifiably" relied on the representation, and (2) with respect to the Beechnut, Longenbaugh, and W. 34th St. properties,

─────────────

[117]Complaint, Docket Entry No. 22, ¶ 59.

one of Lam's statements during his deposition shows he could not have "actually and justifiably" relied on the representation.[118]

With regard to the Bissonnet property, Alpha argues that Lam and Chau's reliance is not justifiable because Lam "knew" that real estate brokers "do not render their professional services free of charge"[119] and because the oral representation on which they relied directly contradicts the terms of a written contract between the parties.[120]

Lam and Chau's claim does not fail in this instance merely because they subsequently entered into the Bissonnet Management Agreement with Nguyen and Alpha.   Alpha is correct that Texas courts have held that in the context of fraudulent inducement, reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law.   DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A., 112 S.W.3d 854, 858 (Tex. App. — Houston [14th Dist.] 2003, pet. denied) (en banc).   Cases applying this rule involve plaintiffs who are attempting to avoid contractual obligations by arguing that the defendant, in making pre-contractual oral representations that directly contradict provisions of the contract, fraudulently induced them to enter into

---

[118]Alpha's Motion, Docket Entry No. 38, ¶¶ 23-24.

[119]Id. ¶ 24.

[120]Alpha's Reply, Docket Entry No. 52, p. 3.

the contract.  See DRC Parts & Accessories, 112 S.W.3d at 856;
Wuertz v. Nationwide Life Ins. Co., 2009 WL 1331860, at *1-2, 4-5
(Tex. App. — Houston [1st Dist.] 2009, no pet.) (unreported).  The
rule is based on the policy that parties have an interest in
attaining certainty and avoiding disputes through written
contracts.  In this action, however, Lam and Chau are not alleging
they were fraudulently induced to enter into the Bissonnet
Management Agreement; instead, they allege that Nguyen's
misrepresentation induced them to purchase the Bissonnet property
on April 12, 2006.  The management agreement was not executed until
May 30, 2006.  While the agreement may contradict Nguyen's alleged
oral representation, it does not preclude Lam and Chau from seeking
damages for fraudulent representations made with the intent to
induce them to use Alpha's services to purchase the Bissonnet
property.

Alpha also argues that Lam could not have justifiably relied
on Nguyen's representation because Lam was aware the representation
was "patently unreasonable."[121]  During his deposition Lam testified
as follows regarding Nguyen's alleged offer to manage the
properties free of charge:

> Q: When did Ms. Nguyen make [this] representation[] to
> you?
>
> A: I don't remember when but first time contact.  And
> that's the offer I got before I flew to Houston.

---

[121]Alpha's Reply, Docket Entry No. 52, p. 2.

-34-

. . .

Q: How did she make these representations to you?  Was it on the telephone or through an e-mail?

A: On the telephone.

. . .

Q: You understood her to be saying that no matter what property or properties you purchased, if you bought them, she would do these things for you?

A: That's what we understood.

Q: But you didn't ask her to get it in writing?

A: No.

. . .

Q: In your experience, have you ever known of any other property manager, besides Ms. Nguyen or Alpha, who has agreed to manage commercial properties at no charge for five years?

. . .

A: No, that's the — that's the offer I got from her.

Q:  But you've never known anybody else to agree to those terms, correct?

A: No, I don't know anyone.

Q:  Does it seem reasonable to you that somebody would agree to do that for free for five years?

. . .

A: It might be reasonable if she make a commission out of it; that's how I'm thinking at that time.[122]

Nguyen's affidavit states that it is "not true" that "Alpha agreed to manage for free any Houston properties that they

_____

[122]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 41:10–45:16.

bought."[123]  She states that it "would not make financial sense for [Alpha] to do it, even in exchange for the commission on the property."[124]

The court concludes that Lam and Chau have demonstrated there is a genuine issue of material fact as to whether they justifiably relied on Nguyen's alleged free-management representation.  Lam's admission that he is unaware of any other real estate agents who offer free management does not prove that Nguyen did not in fact make such a representation.  While an offer of free management may be unconventional, the record contains plausible rationales for why it might have been offered in this action.  For instance, in her deposition Nguyen explains that Alpha generates income from real estate transactions in two ways — commissions and management fees.[125]  Since Nguyen thought of Lam as an "important client"[126] and Lam was considering investing, through Alpha, almost $2 million of his own money into Houston properties, Nguyen may have concluded that the prospect of receiving large commissions for these transactions was substantial enough to offer management without compensation.

---

[123]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 8.

[124]Id.

[125]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 16:21–17:1.

[126]Id. at 86:18–87:7.

In addition, Lam and Chau's reliance could also be justified
by the way cultural factors influenced Lam and Nguyen's business
relationship.  Lam states that he initially selected Alpha largely
because Nguyen was Vietnamese and because of his belief that
Vietnamese business relationships are based on trust.[127]  The record
contains evidence that other dealings between Lam and Nguyen were
based on trust, or at least based on informal agreements, including
management agreements negotiated orally[128] and a $100,000 loan from
Nguyen to Lam given without a promissory note.[129]

Accordingly, with respect to the Bissonnet property, the court
finds that a reasonable jury could conclude that Lam and Chau
justifiably relied on Nguyen's alleged representation that she
would manage the properties for free.  Instead of granting summary
judgment for Alpha on this claim, the court will grant Lam and
Chau's motion to dismiss this claim without prejudice.

Alpha also argues that it is entitled to summary judgment with
respect to the Beechnut, Longenbaugh, and W. 34th St. properties as
to Lam and Chau's claim that Nguyen represented she would manage
the properties for free.  Lam signed the Bissonnet Management

[127]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket
Entry No. 49, ¶ 5; Deposition of Tony Lam, Exhibit A to Tab 2 of
Plaintiffs' Response, Docket Entry No. 49, pp. 29:7–14, 65:9–66:11.

[128]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs'
Response, Docket Entry No. 49, pp. 93:18–97:7.

[129]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs'
Response, Docket Entry No. 49, pp. 251:12–252:18.

Agreement on May 30, 2006.[130]  Lam agreed during the deposition that as of the day he signed that agreement, he understood Alpha Realtors would not be managing any properties for free.[131]  Alpha argues that since Lam and Chau closed on the Beechnut, Longenbaugh, and W. 34th St. properties after May 30, 2006, plaintiffs could not have actually and justifiably relied on Nguyen's previous representation that she would manage all the properties for free.[132]

Lam and Chau's response is premised on the significance of the deadlines imposed by § 1031.  Since Lam and Chau sold their Hawaii property on March 17, 2006, § 1031 mandated that they had until May 1, 2006, to identify their replacement properties.[133]  Only the identified properties could qualify for § 1031's tax benefits.  See 26 U.S.C. § 1031(a) (2006).  Lam and Chau argue that their reliance on Nguyen's representation caused injury not only when they closed on the latter three properties, but when they identified those properties as replacement properties on May 1, 2006.[134]

_____

[130]Bissonnet Management Agreement, Exhibit C to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, pp. 5-7.

[131]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 69:3-6.

[132]Alpha's Motion, Docket Entry No. 38, ¶ 23.

[133]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 2.  See also 26 U.S.C. § 1031(a) (2006).

[134]Plaintiffs' Response, Docket Entry No. 49, pp. 14-16.

The court concludes that Alpha is entitled to summary judgment on this claim with respect to the Beechnut, Longenbaugh, and W. 34th St. properties because of the evidence showing Lam was aware that as of May 30, 2006, Nguyen and Alpha did not plan to manage the properties for free.  Lam and Chau's complaint alleges that Nguyen's alleged representation was made "with the intent of inducing Plaintiffs to purchase various properties, and Plaintiffs, did, in fact, act in reliance on [this representation] when they purchased the properties at issue in this lawsuit."[135]  In short, Lam and Chau allege they were fraudulently induced to purchase the properties, not that they were fraudulently induced to identify the properties pursuant to § 1031.  They purchased the Beechnut property on June 7, 2006, the Longenbaugh property on August 26, 2006, and the W. 34th St. property on September 5, 2006.  Since all three of these purchases occurred after Lam agreed to pay Nguyen a management fee for the Bissonnet property, a reasonable jury could not conclude that for their subsequent three purchases, Lam and Chau justifiably were relying on Nguyen's representation of free management from late 2005 or early 2006.

> (c)  Representation  Concerning  Occupancy  at  the
>       Properties

Lam and Chau allege that when they first contacted Nguyen, she represented that if they purchased a property she showed them, she

---

[135]Complaint, Docket Entry No. 22, ¶ 62.

would maintain full tenant occupancy at the property.[136]   Alpha
argues that Nguyen's alleged representation is either an opinion of
future events or a promise of future performance (not a statement
of fact), and as such requires proof of fraud that goes beyond that
required for ordinary fraud.[137]   Alpha argues that since the record
lacks the requisite evidence, the claim fails as a matter of law.
Lam and Chau move to dismiss the claim without prejudice.[138]

     As with most of Nguyen's alleged representations, there is
clearly a genuine issue of fact as to whether Nguyen ever made the
representation:   Lam asserts she made it, and Nguyen asserts she
did not.   Lam states that Nguyen represented over the telephone
that she would maintain full occupancy at the properties and that
he believed her because she said she had "clientele" that "come to
her from all over [the] United States."[139]   Lam states that he
believed that it was possible for a real estate broker to follow
through with such a promise at the time of the phone call but now
understands it is "not possible" for a broker to guarantee full
occupancy.[140]   Nguyen denies making the representation and states

---

[136]Id. ¶ 59.

[137]Alpha's Motion, Docket Entry No. 38, ¶ 25.

[138]Plaintiffs' Response, Docket Entry No. 49, p. 3.

[139]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs'
Response, Docket Entry No. 49, pp. 46:8–47:7.

[140]Id. at 47:8–19.

she has "no way of predicting whether a property will attract enough tenants to keep it fully occupied."[141]

Nguyen's alleged representation could be construed as a promise to do an act in the future (*i.e.*, maintain full occupancy). "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." Spoljaric, 708 S.W.2d at 434. A party's intent is determined at the time the party made the representation; however, it may be inferred from the party's subsequent acts after the representation is made. Id.

Essentially, Lam and Chau have to show that Nguyen's promise to maintain full occupancy was made with both a deceitful purpose and with no intention of performance. The only evidence in support of their claim is Lam's statement that Nguyen made the promise to him over the phone in early 2006.[142] There is no evidence showing that Nguyen had "no intention" of maintaining full occupancy. In contrast, the record contains several examples of Nguyen's efforts to attract tenants to the properties owned by Lam and Chau. Nguyen explains that Alpha advertised for the Beechnut property with flyers and magazine ads, which Lam approved.[143] When tenants moved

---

[141]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 9.

[142]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 46:8–48:7.

[143]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 142:21–143:14.

out of the Bissonnet property, Nguyen states that she advertised for the empty space on a billboard, put a sign in front of the property, listed the property on the Loopnet website and on Commercial Gateway, and called people they knew who might have wanted to rent.[144]   Lam offers no evidence to dispute these statements.

        Since Nguyen's alleged promise to maintain full occupancy would necessarily depend on whether tenants would want to rent space at the property, the statement could also be construed as an opinion about the occurrence of a future event (*i.e.*, that tenants will want to rent the space).  An opinion may constitute fraud "if the speaker knows that it is false" or "where the speaker purports to have special knowledge of facts that will occur or exist in the future."  <u>Clardy Mfg. Co. v. Marine Midland Business Loans</u>, 88 F.3d 347, 359-60 (5th Cir. 1996) (applying Texas law).  In this context, Lam and Chau, in addition to establishing the ordinary elements of fraud, must show that Nguyen either knew the statement was false when made or purported to have special knowledge of future facts. The only evidence supporting these elements is Lam's statement that Nguyen made the oral representation and Lam's statement that Nguyen said she had clientele coming to her from all over the United States.[145]  Even assuming that Nguyen made the representation

---

[144]<u>Id.</u> at 205:14-23.

[145]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 46:8-18.

and that her comment about having a nationwide clientele base is correctly characterized as "special knowledge," Lam and Chau still must show that their reliance on the statement was "justifiable." Although Lam was unfamiliar with the Houston real estate market, he had owned commercial real estate in Hawaii and had owned, operated, and sold several businesses over the course of twenty years.[146]  A reasonable jury could not conclude that a person with over twenty years of business experience "justifiably" relied on a real estate broker's promise that there would never be any vacancies for any of the properties he purchased.  Accordingly, the court concludes that whether the representation is construed as a promise to perform or an opinion of future facts, Alpha is entitled to summary judgment on Lam and Chau's claim that Nguyen fraudulently represented she would maintain full occupancy at the Bissonnet, Beechnut, Longenbaugh, and W. 34th St. properties.

> (d)   Representation   Concerning   the   Properties'
>       Appreciation

Lastly, Lam and Chau allege that Nguyen, through Alpha, fraudulently "represented that the value of the Bissonnet, Beechnut, Longenbaugh, and W. 34th St. properties would increase under their management."[147]

---

[146]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 9:11–17:18.

[147]Complaint, Docket Entry No. 22, ¶ 22.

Alpha moves for summary judgment on this claim, arguing that even if Nguyen made the representation, there is no evidence Alpha knew it was false at the time it was made or that Alpha purported to have "special knowledge" about the fluctuation of real estate prices.[148]   Lam and Chau move to dismiss the claim without prejudice.[149]

An opinion may constitute fraud "if the speaker knows that it is false" or if the speaker "purports to have special knowledge of facts that will occur or exist in the future." Clardy Mfg. Co. v. Marine Midland Business Loans, 88 F.3d 347, 359–60 (5th Cir. 1996) (applying Texas law).  The court concludes that a reasonable jury could not conclude that even if Nguyen made the representation, she knew it was false or she purported to have special knowledge of future facts.  Lam states that Nguyen made the representation, and Nguyen states that she did not.[150]   During Lam's deposition, the following exchange occurred:

> Q: Did Ms. Nguyen tell you how she was able to predict that the value of these properties would increase?
>
> A: No.
>
> Q: Did you have any reason to believe that Ms. Nguyen was able to predict increases or decreases in the value of real estate?
> . . .

---

[148]Alpha's Motion, Docket Entry No. 38, ¶ 26.

[149]Plaintiffs' Response, Docket Entry No. 49, p. 3.

[150]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 48:20–51:18; Affidavit of Jane Nguyen, Exhibit 1 of Alpha's Motion, Docket Entry No. 38, ¶ 9.

A: No.

Q: So were you just relying on her professional judgment and opinion that they would increase?

A: Absolutely.[151]

Reliance must be justifiable and reasonable. Lam acknowledged that he had no reason to believe that Nguyen was an accurate predictor of how the real estate market would fare in the future, and if he did rely on the statement, a reasonable jury could not conclude that was a justifiable and reasonable decision. Therefore, Alpha is entitled to summary judgment on the claim that Nguyen represented that the values of all the properties would increase under her management.

(e) Conclusion

With respect to Nguyen's alleged representation that she would evenly split her commission with Lam and Chau, the court concludes that Alpha is entitled to summary judgment as to the Beechnut property (and that Lam and Chau's motion to dismiss without prejudice will therefore be denied) and that as to the Bissonnet, Longenbaugh, and W. 34th St. properties, Alpha's motion for summary judgment will therefore be denied, and the claim as to these properties will be dismissed without prejudice.

---

[151]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 51:10-22.

With respect to Nguyen's alleged representation that she would provide management free of charge, the court concludes that Alpha is entitled to summary judgment as to the Beechnut, Longenbaugh, and W. 34th St. properties (and that Lam and Chau's motion to dismiss without prejudice will therefore be denied), and that as to the Bissonnet property, Alpha's motion for summary judgment will be denied, and the claim will be dismissed without prejudice.

With respect to the representations that Nguyen would maintain full occupancy and that the value of the properties would increase under her management, the court concludes that Alpha is entitled to summary judgment with respect to the Bissonnet, Beechnut, Longenbaugh, and W. 34th St. properties and that Lam and Chau's motion to dismiss without prejudice will therefore be denied.

2.  <u>Lam and Chau's Allegation that Alpha Realtors and Nguyen Made Fraudulent Representations Concerning the Acquisition of Tenants for the Beechnut Property</u>

Lam and Chau allege that Nguyen, on behalf of Alpha Realtors, represented that (1) "if Plaintiffs bought the Beechnut property and financed the construction of improvements on the property, Alpha and Nguyen, with the assistance of [Quynh] Le[,] . . . would assist Plaintiffs in finding tenants to occupy those improvements;" and (2) Nguyen and Alpha Realtors "had, at the time of purchase, secured seven letters of commitment and five leases for the property."[152]   Lam and Chau further allege that (1) neither of the

---

[152]Complaint, Docket Entry No. 22, ¶ 68.

representations proved to be true; (2) at the time they were made Alpha Realtors and Nguyen either knew they were false or made them recklessly; (3) they were made with the intent to induce Lam and Chau to act on them by purchasing the Beechnut property and by securing financing for improvements through Alpha Financial; (4) Lam and Chau relied on the representations by purchasing the property and financing the construction of over $2,500,000 of improvements; and (5) as a result, Lam and Chau sustained injury.

Alpha moves for summary judgment, arguing that (1) the evidence shows that the alleged representations were not false — that they did in fact assist in finding tenants and that they did in fact secure prospective tenants to sign pre-leases and letters of commitment; and (2) the alleged representations were made after Lam and Chau purchased the Beechnut property and committed to the construction project, thereby nullifying Lam and Chau's claim of fraudulent inducement.[153]   Lam and Chau move to dismiss the claim without prejudice.[154]

> (a)   Representation that Alpha Would Assist Lam and Chau
>       in Finding Tenants

Lam and Chau purchased the Beechnut property with the intention of constructing improvements to create a business park.[155] According to Lam and Chau, Alpha Realtors and Nguyen promised them,

---

[153]Alpha's Motion, Docket Entry No. 38, ¶ 29.

[154]Plaintiffs' Response, Docket Entry No. 49, p. 3.

[155]See Complaint, Docket Entry No. 22, ¶ 24-27.

-47-

before they purchased the property that they would help them find prospective commercial tenants.[156]  "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." Spoljaric, 708 S.W.2d at 434.  Lam and Chau closed on the Beechnut property on June 7, 2006, for $480,000,[157] and Lam contracted with CFY Group, Inc. on August 15, 2006, agreeing to pay $2,143,000 for the business-park project.[158]

The record contains several examples of Alpha Realtors' efforts to secure tenants for the business park through pre-leases and letters of commitment.  Nguyen states that six tenants signed pre-leases for the business park, with each lease stating that the commencement of the lease was "[t]he earlier of the date the Tenant opens for business in the Premises or September 1st, 2007."[159] Nguyen's assistant, Quynh Le, states that she did all the logistical work to gather all six of the prospective tenants' signatures.[160]

---

[156]Id. ¶ 68.

[157]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 97:24–98:13.

[158]Beechnut Standard Form of Agreement, Exhibit 15 to Alpha's Motion, Docket Entry No. 38, pp. 1–2.

[159]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 115:20–116:14.

[160]Deposition of Quynh Le, Exhibit 5 to Alpha's Motion, Docket Entry No. 38, pp. 19:17–21:7.

Nguyen states that she was responsible for convincing one out of the six tenants to sign a pre-lease (a company called "AQA Construction"),[161] and Le states that she was responsible for acquiring pre-leases from two companies — Omega Motors and Bright & Smart.[162]  Nguyen also states that Alpha, along with CFY Group, Inc., placed signs around the property advertising the business park.[163]

Lam and Chau allege that Alpha forged Lam's signature on some of the pre-lease documents and submitted them to Wachovia Bank, Lau's lender for the business park.[164]  Le states that she signed Lam's name on all six of the pre-leases at Lam's instruction because Lam wanted them quickly submitted to "satisfy the lender."[165]  According to Nguyen, Alpha Realtors, per Lam's instruction, did not collect a security deposit from any of the six prospective tenants because Lam was "nervous" about whether the construction would be completed on time and because he did not want to pay Alpha Realtors any fees.[166]

---

[161]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 113:22-114:6.

[162]Deposition of Quynh Le, Exhibit 5 to Alpha's Motion, Docket Entry No. 38, pp. 21:8-22:3.

[163]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 123:23-124:9.

[164]Complaint, Docket Entry No. 22, ¶ 28.

[165]Deposition of Quynh Le, Exhibit 5 to Alpha's Motion, Docket Entry No. 38, pp. 22:18-23:23.

[166]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 117:13-118:5.

The parties do not dispute that the business-park construction was not completed until at least mid-2008, almost a year later than the pre-leases' stated commencement date.[167]   They also do not dispute that once the business park was completed, none of the six prospective tenants moved into the business park.[168]   Lam and Chau allege that there never were any tenants who actually wanted to move into the business park and that the letters of commitment and pre-leases "were a sham."[169]   The record contains sworn declarations from seven individuals who stated that they signed either a pre-lease or a letter of commitment to rent space at the business park as well as copies of their pre-leases and letters of commitment.[170] Six of the seven prospective tenants state that they were approached by either Nguyen or Le to commit to moving into the business park.[171]   The tenants' reasons for not honoring their agreements include discontent with the delayed construction and the

---

[167]See Complaint, Docket Entry No. 22, ¶ 26; Deposition of Tony Lam, Exhibit A to Tab 2 of  Plaintiffs' Response, Docket Entry No. 49, pp. 300:20–301:11; Deposition of Quynh Le, Exhibit 5 to Alpha's Motion, Docket Entry No. 38, p. 33:3–8.

[168]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 119:1–121:8; Complaint, Docket Entry No. 22, ¶ 27.

[169]Complaint, Docket Entry No. 22, ¶ 27.

[170]See Exhibits 7(a)–(g) to Alpha's Motion, Docket Entry No. 38.

[171]See Exhibits 7(a)–(b) & 7(d)–(g) to Alpha's Motion, Docket Entry No. 38.

decline in the economy.[172] Lam states on one hand that he did not see the tenants' executed pre-leases and letters of commitment until mid-2008 when Wachovia sent them to him, but on the other hand that he remembers signing and faxing to Alpha at least one letter of commitment.[173]

Other than Lam's allegation, there is nothing in the record showing that Alpha and Nguyen had a deceitful purpose or had "no intention" of following through when they allegedly represented that they would help Lam and Chau find tenants for the business park. The evidence shows that Alpha, through Nguyen and Le, not only intended to assist in finding tenants but that it actually did assist in finding tenants. Lam and Chau do not dispute that Alpha helped secure either pre-leases or letters of commitment from seven prospective tenants, and besides the fact that none of them moved into the business park, there is no evidence these tenants were fraudulently obtained.

Because a reasonable jury could not conclude that with respect to Nguyen's alleged promise, Nguyen or Alpha Realtors had both a deceitful purpose and no intention of following through, the court will grant Alpha's motion for summary judgment with respect to the alleged promise.

---

[172]See, e.g., Declaration of Helen Crosby, Exhibit 7(a) to Alpha's Motion, Docket Entry No. 38, p. 1; Declaration of Tru Quoc Dang, Exhibit 7(b) to Alpha's Motion, Docket Entry No. 38, p. 1.

[173]Compare Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 193:20–194:16, with id. at 199:1–25.

        (b)   Representation that at the Time of Purchase They Had Secured Pre-leases and Letters of Commitment from Prospective Tenants

Lam and Chau allege that Alpha fraudulently represented at the time of purchase that it had secured seven letters of commitment and five leases for the property.[174]   Alpha argues that it is entitled to judgment as a matter of law on this claim because since Lam and Chau did not ask Alpha to help find prospective tenants until after they purchased the property, Lam and Chau could not have relied on the alleged representation in purchasing the property.[175]   Lam and Chau move to dismiss the claim without prejudice.[176]

Although Lam and Chau allege that they relied on Nguyen's representation "by purchasing the Beechnut property and financing the construction of over $2,500,000 of improvements on the property,"[177] Lam states in his deposition that the representations were made in an attachment to an e-mail sent on January 30, 2007.[178] Lam and Chau provide no summary-judgment evidence showing that the representations or any similar representations were made before that.   Because Lam and Chau acquired the Beechnut property on

---

[174]Complaint, Docket Entry No. 22, ¶ 68.

[175]Alpha's Motion, Docket Entry No. 38, ¶ 34.

[176]Plaintiffs' Response, Docket Entry No. 49, pp. 3–4.

[177]Complaint, Docket Entry No. 22, ¶ 71.

[178]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 99:21–100:14, 202:5–203:2.

June 7, 2006, and contracted for the business-park project on August 15, 2006, a reasonable jury could not conclude that Lam and Chau actually and justifiably relied on the alleged representation in making the purchase or agreeing to the business-park project. The court thus concludes that no genuine dispute of material fact exists with respect to the element of reliance.

       (c)  Conclusion

With respect to the claims that Nguyen fraudulently represented Alpha would assist Lam and Chau in finding prospective tenants and that Nguyen fraudulently represented that at the time they purchased the Beechnut property, Alpha had already secured pre-leases and letters of commitment, the court concludes that Alpha is entitled to judgment as a matter of law and that Lam and Chau's motion to dismiss the claims without prejudice will be denied.

3.    <u>Lam and Chau's Allegation that Nguyen, Le, Alpha Realtors, and Alpha Financial Conspired to Commit Fraud</u>

Lam and Chau allege that Nguyen, acting on behalf of Alpha Realtors and Alpha Financial, and Le, acting on behalf of Alpha Realtors, "agreed to conspire in an effort to fraudulently induce Plaintiffs into purchasing one or more properties in the Houston, Texas area."[179]  They allege that the conspiracy focused on the

---

[179]Complaint, Docket Entry No. 22, ¶ 76.

Beechnut property, and "believing Plaintiffs to be vulnerable as a result of their residence in another state (and ultimately another country) and the fact that English was not their first language," Nguyen and Le "represented that they had seven letters of commitment and five leases in place for tenants to occupy the property once improved and showed Plaintiffs projected cash flow statements and a spreadsheet of lease terms to support these claims."[180]   Lam and Chau further allege these documents were a "sham," that Nguyen and Le forged Lam's signature and initials on the documents and submitted them to Lam and Chau's lender (Wachovia) without their knowledge, and that Lam and Chau, as a result of these actions, purchased the Beechnut property.[181]

Alpha moves for summary judgment, arguing that (1) the conspiracy claim fails because the underlying fraud claim fails, and (2) Lam and Chau have not shown any evidence of a "meeting of the minds" between them and Alpha.[182]   Lam and Chau move to dismiss the claim without prejudice.[183]

(a)  Civil Conspiracy Under Texas Law

In Texas a plaintiff seeking recovery for a civil-conspiracy tort must establish the following elements:   (1) two or more

---

[180]Id. ¶¶ 76-78.

[181]Complaint, Docket Entry No. 22, ¶¶ 78-79.

[182]Alpha's Motion, Docket Entry No. 38, ¶ 37.

[183]Plaintiffs' Response, Docket Entry No. 49, pp. 3-4.

persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. Massey v. Amco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983). As a "derivative tort," "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." See Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996). Moreover, civil conspiracy "requires specific intent" to "agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Juhl v. Airington, 936 S.W.2d 640, 644 (Tex. 1996) (internal quotations omitted). "[O]ne cannot agree or conspire to be negligent." Id.

(b)  Applying the Facts to the Applicable Law

Lam and Chau's conspiracy allegation is again centered on the claim that Alpha conspired to "fraudulently induce" Lam and Chau into purchasing the Beechnut property and obtaining financing for the business park by (1) representing that it had seven letters of commitment and five pre-leases in place and (2) creating "sham" leases and letters of commitment with Lam's forged signature and submitting them to Wachovia without Lam or Chau's knowledge.[184]

Since conspiracy requires proof of an underlying tort — in this instance, fraudulent inducement — the court concludes Alpha is

---

[184]Complaint, Docket Entry No. 22, ¶¶ 76, 78.

entitled to judgment as a matter of law as to the conspiracy claim. Because Lam testified that he did not learn of the alleged representations and documentation until late January of 2007,[185] and because Lam and Chau do not present any summary-judgment evidence to the contrary, Lam and Chau's Beechnut investment could not have been "as a result of" Alpha's actions as alleged in the Complaint.[186] Both the acquisition of the Beechnut property and the contract for the Beechnut Business Park were in writing and signed by Lam and/or Chau by September of 2006.[187] Lam and Chau's failure to establish a genuine dispute of material fact with regard to the reliance element for their fraudulent-inducement claim necessarily defeats their attempt to establish a civil conspiracy.

The court therefore concludes that Alpha is entitled to summary judgment with respect to Lam and Chau's Beechnut civil-conspiracy cause of action and that Lam and Chau's motion to dismiss without prejudice will be denied.

---

[185]Deposition of Tony Lam, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 99:21-100:14, 202:5-203:2.

[186]Complaint, Docket Entry No. 22, ¶ 78.

[187]See Beechnut Settlement Statement, Exhibit D to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 1; Beechnut Standard Form of Agreement, Exhibit 15 to Alpha's Motion, Docket Entry No. 38, p. 1.

4.   <u>Lam and Chau's Allegation that Nguyen and Alpha Realtors Made Fraudulent Representations About the Finances, Leasing, and Future Management of the Longenbaugh Property</u>

Lam and Chau allege that Alpha made three fraudulent representations concerning the Longenbaugh property: (1) that if Lam and Chau purchased the property, Nguyen would manage the dry-cleaning business; (2) that Lam and Chau would enjoy, on average, a net monthly income of $5,000 after they paid the mortgage (supported by financial documents allegedly vouched for by Alpha Realtors); and (3) that Lam and Chau would be able to secure a cell-phone-tower lease with T-Mobile for more than $750 per month.[188]   Lam and Chau further allege that (1) none of the representations were true; (2) Alpha knew they were false or made them recklessly; (3) they were made with the intention of inducing Lam and Chau to purchase the Longenbaugh property, improvements for the property, and the dry-cleaning business on the property; and (4) that Lam and Chau in fact relied on the representations and took such actions, thus suffering injury.[189]

Alpha moves for summary judgment with respect to all three representations.[190]   Lam and Chau respond with counter-arguments for the first two alleged representations but move to dismiss without

_____

[188]Complaint, Docket Entry No. 22, ¶¶ 83-34.

[189]<u>Id.</u> ¶¶ 85-88.

[190]Alpha's Motion, Docket Entry No. 38, ¶ 42.

prejudice their claim based on the representation concerning the T-Mobile lease.[191]   Each alleged representation will be discussed in turn.

> (a)   Representation that Nguyen Would Manage the Dry-Cleaning Business

According to Lam, Nguyen told him she would manage the dry-cleaning business without compensation the first time they discussed the Longenbaugh property.[192]  Although Nguyen denies ever being involved in the dry-cleaning business,[193] Lam states that Nguyen said she had previously owned a dry-cleaning business.[194]

Alpha first argues that Nguyen's alleged promise to manage the business fails because it falls within the statute of frauds and was not in writing, and second, that Lam and Chau could not have reasonably and justifiably relied on the promise.[195]

When a defendant moves for summary judgment based on an affirmative defense such as statute of frauds, it must conclusively establish the defense as a matter of law.   Royle v. Tyler Pipe

---

[191]Plaintiffs' Response, Docket Entry No. 49, pp. 3-4.

[192]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 231:25-232:11.

[193]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 176:3-8.

[194]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 233:1-7.

[195]Alpha's Motion, Docket Entry No. 38, ¶ 42.

Indus., Inc., 6 S.W.3d 593, 594 (Tex. App. — Tyler 1999, pet.
denied) (citing Montgomery v. Kennedy, 669 S.W.2d 303, 310–11
(Tex. 1984)).  In Texas any agreement "which is not to be performed
within one year from the date of making the agreement" is
unenforceable.  Tex. Bus. & Com. Code Ann. § 26.01(a)–(b).  Whether
a contract falls within the statute of frauds is a question of law.
Beverick v. Koch Power, Inc., 186 S.W.3d 145, 149 (Tex. App. —
Houston [1st Dist.] 2005, pet. denied).  "A contract that could
*possibly* be performed within a year, however improbable performance
within one year may be, does not fall within the statute of
frauds." Id. (citing Hall v. Hall, 308 S.W.2d 12, 15 (Tex. 1957)).
Furthermore, an oral contract generally does not fall within the
statute of frauds "where no period of performance is stated."
Bratcher v. Dozier, 346 S.W.2d 795, 796 (Tex. 1961).

The parties do not dispute that Nguyen's alleged
representation was not in writing.  Lam's deposition includes the
following discussion about the length of time he expected Nguyen to
carry out her alleged promise:

> Q: How long did she agree to manage the dry cleaning
> business for?
>
> A: We have no time frame.  The only promise I have, the
> business will be improved, and the business will be
> resale, and using that money to return back to her
> [$]100,000.  That's the — that's the condition and that's
> the promise I have.
>
> Q:  But not in writing?
>
> A:  Not in writing.

-59-

Q:  And so if you had kept the dry cleaning business for
ten years, it's your understanding that Ms. Nguyen was
obligated to run it for that entire ten years; is that
right?

A: When the business was purchased, there was no time
frame. . . .  The only thing was mentioned that the
business would be turned around and will be sell within
a year or so.  That mean — I don't know what mean.  You
know, a year, that mean can be one month, within a year,
or so.  That mean could be two or three years; I have no
idea.  Until the business improve and business will be
resell, and that's what I understood.[196]

The court concludes that Alpha is not entitled to summary
judgment based on the statute of frauds.  Lam states that Nguyen
promised to manage the dry-cleaning business for an indefinite
amount of time.  The duration of Nguyen's management, according to
Lam, depended on how quickly she improved the business to ensure a
profitable resale.  Lam was under the impression this process had
the potential to be accomplished within one year.  Since the record
contains evidence that Nguyen's performance had the possibility of
being completed within one year, the agreement does not
conclusively fall within the statute of frauds.  At the very least,
a fact issue exists as to the parties' understanding of the
duration of Nguyen's management.

A genuine issue of material fact also exists as to whether Lam
and Chau reasonably and justifiably relied on the alleged promise
in purchasing the Longenbaugh property.  To determine justifiability,

_____

[196]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs'
Response, Docket Entry No. 49, pp. 233:15-234:11.

a court should inquire "whether — given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud — it is extremely unlikely that there is actual reliance on the plaintiff's part." <u>Clardy Mfg. Co. v. Marine Midland Business Loans</u>, 88 F.3d 347, 360 (5th Cir. 1996).  The evidence in the record showing (1) Nguyen's financial incentives to persuade Lam to purchase properties,[197] (2) the informal nature of the parties' business dealings,[198] and (3) the degree of trust Lam placed in Alpha Realtors, in part because its representatives were Vietnamese, cumulatively present a fact question as to whether reliance was justified.[199]

>           (b)  Representations About the Seller's Financial
>                Information

Lam and Chau contend that before they purchased the dry-cleaning business located on the Longenbaugh property from Murka, Alpha gave them two of Murka's income statements (from 2005 and 2006), vouched for their accuracy, and told them that based on the

---

[197]Deposition of Jane Nguyen, Tab 2 of Exhibit B to Plaintiffs' Response, Docket Entry No. 49, pp. 16:21–17:1; 86:18–87:7.

[198]<u>See</u> Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 93:18–97:7; Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 251:12–252:18.

[199]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 5; Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 29:7–14, 65:9–66:11; 253:14–17.

data, they would receive, on average, $5,000 in monthly net income.[200]  Lam and Chau state that after they bought the property, they in fact lost $3,000 a month.[201]  The record contains four financial documents for the Longenbaugh property, two of which display data from the time period preceding Lam and Chau's ownership of the property.[202]  The first shows that from January 1 to October 30, 2005, the gross income for the dry-cleaning business was $154,352 and expenses equaled $116,341, for a net operating income of $38,011.[203]  Lam stated that he "cannot recall" when he received this document.[204]  The second document shows a gross monthly income of $118,909.26 from January through July of 2006.[205] Lam stated that he had no knowledge of who prepared the document when he reviewed it before making the purchase.[206]

---

[200]Complaint, Docket Entry No. 22, ¶ 83.

[201]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 251:22-24.

[202]See Exhibit M to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, pp. 1-3; Exhibit 17 to Alpha's Motion, Docket Entry No. 38, p. 1.

[203]Income Statements for Green Planet Cleaners, Exhibit M to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, pp. 1.

[204]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 278:6-8.

[205]Green Planet Cleaners, Exhibit 17 to Alpha's Motion, Docket Entry No. 38, p. 1.

[206]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 240:6-15.

Alpha argues that there is no evidence that Alpha or any of its representatives vouched for Murka's financial information, and second, that there is no evidence they "knew, or should have suspected," that the information was inaccurate.

During Lam's deposition, he described how Alpha Realtors allegedly vouched for the accuracy of the data:

> Q: When did Ms. Nguyen definitively vouch for the accuracy of [the financial document labeled Exhibit 17 to Alpha's Motion]?
>
> A: On the first time we talked on the phone. . . .
>
> Q: What did she say?
>
> A: She give me the impression of the income, so that's what I believe on.
>
> Q: Well, did she say, 'This information comes from Murka, and I assure you that it's accurate?'
>
> A: The — confirming, no.  But the number was confirmed that the — this is the net income and this is how the business operate to get the net income, so that's the impression I have.  Besides that, no.
>
> Q: So Ms. Nguyen never said, 'I've checked the backup for these figures and they're all correct?'
>
> A: Like I said, we never mention anything about the document, where it come from.  The only discussion we have, how much and how much the net income; that's all we discuss.[207]

Nguyen testified in her deposition that Alpha Realtors passed on to Lam and Chau the financial information it received from

_____

[207]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 241:21–242:14.

Murka.[208]   For the statement displaying the figures from 2005, however, Nguyen testified that the numbers were merely "an estimate" provided by a Murka employee that Nguyen's assistant "organized" and put into "presentable form."[209]

The court concludes that there is a genuine fact dispute as to whether Alpha vouched for Murka's financial information in an effort to fraudulently induce Lam and Chau to purchase the Longenbaugh property and the dry-cleaning business.  The summary-judgment evidence shows that Alpha provided Lam and Chau with Murka's financial information, and the evidence as to the validity of Alpha's accompanying statements is inconclusive.

Whether Alpha knew or suspected the information was inaccurate is also a genuine dispute of material fact.  Nguyen was aware that her assistant prepared a table of Murka's income and expenses based on estimates from a Murka employee.[210]   Lam claims that those numbers were portrayed to him by Alpha as being accurate.  A reasonable jury could conclude Alpha fraudulently represented that they were accurate in order to get Lam and Chau to purchase the property.

---

[208]Deposition of Jane Nguyen, Tab 2 of Exhibit B to Plaintiffs' Response, Docket Entry No. 49, p. 164:7-24.

[209]Id. at 165:16-167:15.

[210]Id. at 165:16-167:15.

(c)   Representation Concerning the T-Mobile Lease

Lam and Chau allege that Nguyen represented they would "be able to secure a cell phone tower lease with T[-]Mobile in excess of $750 per month because the Longenbaugh property was the only space available in the area for the antennae."[211]  T-Mobile formally offered Lam and Chau $500 per month for the tower on March 7, 2007.[212]  Lam does not recall when Nguyen made the representation but states that he was aware of T-Mobile's $500-a-month offer.[213] He was under the impression "[Nguyen] [would] go back to [] T-Mobile to make the negotiation to bring it up to [$]750" . . . or $1,000."[214]  Lam does not recall whether Nguyen definitively stated that she would bring the number up to $750 or $1,000 or that she would just try to negotiate a higher number.[215]  Lam states that Nguyen told him T-Mobile rejected her offer of $750 to $1,000 per month and advised him to not accept their offer of $500 per month because the tower would "take up too much space."[216]

---

[211]Complaint, Docket Entry No. 22, ¶ 84.

[212]Offer Letter, Exhibit 16 to Alpha's Motion, Docket Entry No. 38, p. 1.

[213]Deposition of Tony Lam, Exhibit A to Tab 2 of  Plaintiffs' Response, Docket Entry No. 49, 270:8-24.

[214]Id. at 271:13-272:11.

[215]Id. at 272:12-15.

[216]Id. at 272:16-25.

Alpha argues that "as a statement of opinion about future events, such a representation is only fraudulent if Nguyen (1) *knew* it was false at the time she made it and (2) purported to have special knowledge of future events," and that Lam and Chau have offered no evidence of either.[217]  Lam and Chau move to dismiss this claim without prejudice.[218]

Although Lam repeatedly asserts that Nguyen did not deliver on her promise to secure a lease with T-Mobile for more than $750, Nguyen's alleged representation is properly characterized as a prediction that she would be able to negotiate that price.  An opinion about future events may constitute fraud "if the speaker knows that [the representation] is false" or if the speaker "purports to have special knowledge of facts that will occur or exist in the future." <u>Clardy Mfg. Co. v. Marine Midland Business Loans</u>, 88 F.3d 347, 359-60 (5th Cir. 1996) (applying Texas law). A reasonable jury could not conclude from the evidence in the record that Nguyen's alleged representation amounts to fraud. Lam's impression that Nguyen would be able to successfully negotiate a lease for an amount higher than T-Mobile's offer of $500, even if it is based on Nguyen's statement, is not sufficient as a matter of law to show that Nguyen that knew that she would be unsuccessful when she said it, or that she purported to have

---

[217]Alpha's Motion, Docket Entry No. 38, ¶ 46.

[218]Plaintiffs' Response, Docket Entry No. 49, pp. 3-4.

special knowledge of T-Mobile's leasing practices. Moreover, the fact that T-Mobile's offer letter is dated over six months after Lam and Chau closed on the Longenbaugh property makes it highly unlikely that a reasonable jury would conclude that Nguyen's alleged representation induced them to purchase the property.[219]

       (d)  Conclusion

With respect to Nguyen's alleged representation that she would manage the dry-cleaning business and Alpha's representation that Murka's financial statements were accurate, the court concludes that there is a genuine dispute of material fact as to Lam and Chau's fraud claim and will thus deny Alpha's motion for summary judgment.

With respect to Nguyen's alleged representation that she would be able to secure a lease with T-Mobile in excess of $750 per month, the court concludes that Alpha is entitled to judgment as a matter of law on Lam and Chau's fraud claim and will thus grant Alpha's motion for summary judgment and deny Lam and Chau's motion to dismiss the claim without prejudice.

     5.   <u>Lam and Chau's Allegation that Alpha Realtors and Nguyen Made Fraudulent Representations Relating to the Management, Financial Status, and Leasing of the W. 34th St. Property</u>

Lam and Chau allege that Alpha Realtors and Nguyen made the following fraudulent representations with respect to the

---

[219]<u>See</u> Offer Letter, Exhibit 16 to Alpha's Motion, Docket Entry No. 38, p. 1.

W. 34th St. property:  (1) that if Lam and Chau purchased the property, Alpha would manage the property and maintain all documents relating to the property in Alpha's offices; (2) that five tenants occupied the property producing an annual net income of $126,828 and that there were no expenses associated with the property for which Lam and Chau would be responsible; (3) that Alpha would locate a replacement tenant to fill an empty space at a more favorable rent than the previous tenant's rent within a few months after closing; and (4) that the ancillary parking lot was part of the property.[220]  Lam and Chau further allege that none of these representations were true, that Alpha either knew they were false when made or made them recklessly, that they were made with the intention of inducing Lam and Chau to purchase the W. 34th St. property, that Lam and Chau did purchase the property, and that consequently Lam and Chau suffered injury.[221]  Alpha moves for summary judgment with respect to all of the alleged representations, arguing that there is no evidence of fraudulent intent.[222]

> (a)  Representation that Alpha Realtors Would Manage the Property and Maintain Property-Related Documents at Their Office

Alpha argues that Lam and Chau's claims that Alpha Realtors never intended to manage the W. 34th St. property and never

---

[220]Complaint, Docket Entry No. 22, ¶¶ 93-96.

[221]Id. ¶¶ 97-100.

[222]See Alpha's Motion, Docket Entry No. 38, ¶ 47.

intended to maintain property-related documents are unsupported by the summary-judgment evidence.[223]  Lam and Chau move to dismiss the claim without prejudice.[224]

"A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." Spoljaric, 708 S.W.2d at 434. A party's intent may be inferred from the party's subsequent acts after the representation is made.  Id.

Nguyen states in her affidavit that Alpha Realtors managed the property pursuant to the parties' management agreement, performing tasks such as "collecting the rent from tenants," "maintaining the property," "paying expenses," "seeking new tenants for vacant spaces," and "maintaining the property's management records."[225] One of the tenants, Maitrix Beauty School, was late paying rent, but Lam states he has "no idea" whether Alpha made any effort to secure the rent payment.[226]

Lam later acknowledges that VNT Development, LLC (Alpha's management arm) wrote several letters to Maitrix Beauty School notifying the school they were behind on rent, that it would receive an eviction notice if rent was not paid by a certain date,

---

[223]Alpha's Motion, Docket Entry No. 38, ¶ 49.

[224]Plaintiffs' Response, Docket Entry No. 49, pp. 3-4.

[225]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 34.

[226]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 179:10-18.

and that it needed to vacate the space.[227]  Lam also acknowledges that Le sent him an e-mail asking whether he wanted Alpha to file a lawsuit against the beauty school for unpaid rent.[228]  Lam's general response to these documents is that from "[his] point of view," Alpha deliberately delayed collecting rent so that Alpha, not Lam and Chau, would collect the late penalties and fees.[229] Alpha submits over seventy pages of copied checks, spreadsheets, contracts, letters, and e-mails as evidence of both its efforts to manage the property and its commitment to maintaining the documents relating to the property.[230]

Even if Lam and Chau were unhappy with the quality of Alpha's management services, based on the evidence in the record, a reasonable jury could not conclude that Alpha had "no intention" of managing the property or maintaining property-related documents. Therefore, Alpha's motion for summary judgment with respect to this claim will be granted.

> (b)  Representation that Five Tenants Occupied the Property Producing a Net Income of $126,828 and that Lam and Chau Would Have No Expenses

Alpha argues that it is entitled to summary judgment on this claim because (1) the record shows that Lam ignored other financial

---

[227]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 181:5-183:19.

[228]Id. at 187:13-188:18.

[229]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 179:22-180:11.

[230]Exhibit 18 to Alpha's Motion, Docket Entry No. 38.

documents that he received before he purchased the property and that show different income and expense figures, and (2) there is no evidence showing that Alpha "knowingly provided any false information" or "concealed any material information" from Lam and Chau.[231]   Lam and Chau respond that fact issues exist as to when Lam received some of the financial documents and as to whether Alpha knew or should have known that the financial documents contained false information.[232]

The parties do not dispute that before Lam purchased the W. 34th St. property, he reviewed a rent roll for the property ("Alpha 1547") that was produced by Alpha.[233]   Alpha 1547 lists five tenants and for each one provides the monthly rent, square footage, and lease expiration date.[234]   The bottom of Alpha 1547 states that the total expenses are "$0.00" and net income is "126,828.00."[235] Nguyen states that Lynn Dang, her assistant, prepared Alpha 1547 based on numbers that came from off the top of the seller's head during a visit to Alpha's office, without "any support at all."[236]

---

[231]Alpha's Motion, Docket Entry No. 38, ¶¶ 50–51.

[232]Plaintiffs' Response, Docket Entry No. 49, pp. 20–24.

[233]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 18.

[234]Alpha 1547, Exhibit 19 to Alpha's Motion, Docket Entry No. 38, p. 1.

[235]Id.

[236]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 185:19–186:6.

Nguyen explains that the seller went back to his office and subsequently transferred more accurate figures to Alpha, which were sent to Lam after Nguyen had already sent him Alpha 1547.[237] According to Nguyen, Alpha 1547 contains "a bunch of mistaken information," including the number of tenants and the stated rent for one of the tenants.[238]

Lam states that before he purchased the property, he might have also received a second financial document ("Lam 37") from Alpha Realtors.[239] Lam 37 has a fax stamp dated February 17, 2006, which was approximately seven months before Lam and Chau closed on the property.[240] The document shows annual income of $142,428 and annual expenses of $24,040.[241] Lam stated that even if he received Lam 37 before purchasing the property, it shows similar figures to Alpha 1547 — that whether or not the property incurred any expenses, he would receive over $100,000 a year in net income.[242]

A third document reflecting financial data from the W. 34th St. property ("Lam 41") shows that for the first half of

---

[237]Id. at 185:21–186:12.

[238]Id. at 193:13–194:13.

[239]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 137:13–138:11.

[240]Lam 37, Exhibit 19 to Alpha's Motion, Docket Entry No. 38, p. 2.

[241]Id.

[242]See Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 139:10–141:19.

2006 gross profit was $71,214, but net income was only $30,127.50,[243] and a fourth ("Lam 42") contains a list of expenses incurred between January and June of 2006.[244]  Lam stated in his deposition that the first time he saw Lam 41 was at his deposition even though Alpha Realtors allegedly e-mailed it to him in July of 2006.[245]  Lam states in his affidavit, however, that he received Lam 41 and 42 after the closing when the seller, PQ Investments, had its accountants transfer them to Lam and Chau when they started researching why the property was producing little if any income.[246]

Alpha argues that Lam 41 and Lam 42, which allegedly were sent to Lam and Chau before closing, show that Lam had to be aware that at least some expenses were associated with the property before he bought it.[247]  The record is unclear, however, as to whether Lam or Chau reviewed Lam 41 and 42 before closing on the property.  Given the undisputed facts that Alpha Realtors gave Lam a financial document containing multiple errors (Lam 1547), a fact issue exists as to whether Alpha Realtors fraudulently represented the financial status of the property to induce Lam and Chau to go through with

---

[243]Lam 41, Exhibit 19 to Alpha's Motion, Docket Entry No. 38, p. 3.

[244]Lam 42, Exhibit 19 to Alpha's Motion, Docket Entry No. 38, p. 4.

[245]See Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 150:17-20, 158:8-159:14.

[246]Affidavit of Tony Lam, Tab 1 of Plaintiffs' Response, Docket Entry No. 49, ¶ 20.

[247]Alpha's Motion, Docket Entry No. 38, ¶ 50.

the purchase.  Likewise, a fact question exists as to whether Alpha Realtors knew it was providing false information at the time it transferred the document to Lam.

On the other hand, a reasonable jury could not conclude that Lam and Chau relied on the representation that there would be no expenses associated with their investment given Lam's prior business experience and the documents that appear to have been sent to him before closing.  The court will grant Alpha's motion with respect to that specific representation.  But to the extent Lam allegedly relied on the net-income figures presented by Alpha Realtors, the court concludes that a genuine issue of material fact exists and will thus deny Alpha's motion for summary judgment.

> (c)  Representation that Alpha Would Locate a Replacement Tenant at a More Favorable Rent Within a Few Months After Closing

Alpha argues that it is entitled to summary judgment because there is no evidence that it had "no intention" of following through with this representation.[248]  Lam and Chau move to dismiss the claim without prejudice.[249]

Nguyen states that A-1 Amusements, a tenant in the W. 34th St. property, "gave notice shortly before closing that it would vacate the property."[250]  According to Nguyen, the seller agreed to a

---

[248]Alpha's Motion, Docket Entry No. 38, ¶ 52.

[249]Plaintiffs' Response, Docket Entry No. 49, pp. 3-4.

[250]Affidavit of Jane Nguyen, Exhibit 1 to Alpha's Motion, Docket Entry No. 38, ¶ 15.

"master lease" in the amount of $80,856 to "protect [Lam and Chau] from any loss resulting from A-1 Amusements' decision to vacate."[251] Lam states that Nguyen advised him to take the credit from the master lease and that closing on the deal would allow him to pocket the credit and still receive rent from the space after Nguyen found another tenant within a few months.[252] Lam also states that Nguyen said he would run out of time on his § 1031 exchange if he did not close on the property.[253] Lam agrees with Nguyen that she did not promise to make up the lost rent if she could not find a replacement tenant.[254]

The parties do not dispute that by March of 2008 Nguyen had located a replacement tenant to occupy a portion of the vacant space.[255] Lam and Chau's complaint alleges that the replacement tenant's lease included a below-market rent and several months of free rent,[256] but they do not point to anything in the record to verify their allegation. Because the record is devoid of any evidence showing that Alpha or Nguyen had "no intention" of finding a replacement tenant when the alleged representation was made, a

---

[251]Id.

[252]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 175:11-19.

[253]Id. at 176:5-15.

[254]Id. at 176:19-25.

[255]See Complaint, Docket Entry No. 22, ¶ 38; Alpha's Motion, Docket Entry No. 38, ¶ 52.

[256]Complaint, Docket Entry No. 22, ¶ 38.

-75-

reasonable jury could not conclude that the alleged representation was made with fraudulent intent.   The court thus concludes that Alpha is entitled to summary judgment on this claim.

> (d)   Representation that the Ancillary Parking Lot was Part of the W. 34th St. Property

Lam and Chau allege that Nguyen represented that the parking lot adjoining the W. 34th St. property, "utilized by visitors to the property," was "part of the property," and that they found out after closing that "the parking lot was instead leased from Center Point Energy."[257]   Alpha argues that it is entitled to summary judgment on this claim because Alpha was "not qualified to render such advice" and that the record contains no evidence that it intentionally represented that the parking lot was part of the property before Lam and Chau's purchase.[258]   Lam and Chau move to dismiss the claim without prejudice.[259]

Lam stated in his deposition that neither Nguyen nor Alpha Realtors said anything about the parking lot "until the new management took over,"[260] which was around August of 2008.[261]   Until

---

[257]Id. ¶ 41.

[258]Alpha's Motion, Docket Entry No. 38, ¶ 53.

[259]Plaintiffs' Response, Docket Entry No. 49, pp. 3-4.

[260]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 190:8-11.

[261]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 171:2-8.

that point, he had no idea that he did not own the parking lot.[262]
When asked whether Nguyen ever told him the parking lot was part of
the property, Lam responded, "Not at all, unless, you know,
something in the form I did not see or I overread, but there's no
information."[263]

Because a reasonable jury could not conclude that Nguyen or
Alpha fraudulently represented that the parking lot was part of the
W. 34th St. property, the court will grant Alpha's motion for
summary judgment with respect to this claim.

(e)  Conclusion

With respect to the allegations that Alpha represented that
(1) it would manage the W. 34th St. property and maintain all
property-related documents, (2) Lam and Chau would pay no expenses,
(3) it would find a replacement tenant within a few months, and
(4) the ancillary parking lot was part of the property, the court
concludes that there is no genuine dispute about any material fact
and that Alpha is entitled to summary judgment (and that Lam and
Chau's motion to dismiss without prejudice will therefore be
denied).

With respect to Lam and Chau's allegation that Alpha
fraudulently represented that the property had five tenants

---

[262]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs'
Response, Docket Entry No. 49, p. 190:16.

[263]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs'
Response, Docket Entry No. 49, p. 190:17–23.

providing annual net income of $126,828, the court concludes that there is a genuine dispute about a material fact and will deny Alpha's motion for summary judgment.

## IV.  **Lam and Chau's Fiduciary-Duty Claims**

### A.  **Background**

Lam and Chau allege that Alpha, Nguyen, and Le breached their fiduciary duties by making "fraudulent misrepresentations" (the same representations analyzed above), "failing to elevate [Lam and Chau's] best interest above their own relative to each of the transactions," and "failing to disclose certain informa-tion . . . which may have affected [Lam and Chau's] buying decisions."[264]

Alpha moves for summary judgment with respect to all of the fiduciary-duty claims, arguing first that they are barred by the applicable statute of limitations, and second, that since they are predicated on Lam and Chau's fraud and conspiracy allegations, they fail as a matter of law.[265]  Lam and Chau respond that they intend to dismiss several of their claims without prejudice (the claims predicated on the fraud allegations they also wish to dismiss) and that their remaining claims are timely and are supported by the evidence.[266]

---

[264]Complaint, Docket Entry No. 22, ¶¶ 116–21.

[265]Alpha's Motion, Docket Entry No. 38, ¶¶ 55–57.

[266]Plaintiffs' Response, Docket Entry No. 49, p. 26.

On October 17, 2010, Lam and Chau also moved for summary judgment (Docket Entry No. 39), but only with respect to their claim that Nguyen and Alpha breached their fiduciary duties by failing to obtain written consent for serving as an intermediary broker and failing to disclose their intermediary status.[267]  Alpha responds (Docket Entry No. 45) by arguing that Alpha Realtors did disclose Nguyen's intermediary status and that, at a minimum, a fact issue exists as to whether Nguyen obtained the requisite consent and whether Lam and Chau knew about Alpha's intermediary status.[268]

## B.    Applicable Law

Under Texas law a plaintiff must prove the following elements to prevail on a claim for breach of fiduciary duty:  (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiffs; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant.  Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277, 283 (5th Cir. 2007); Lundy v. Masson, 260 S.W.3d 482, 501 (Tex. App. — Houston [14th Dist.] 2008, pet. denied).  Texas law recognizes two types of fiduciary relationships:  A formal

---

[267]Plaintiffs' Fiduciary-Duty Motion, Docket Entry No. 39, pp. 1–2.

[268]Alpha Realtors, Inc. and Jane Nguyen's Response to Plaintiffs' Motion for Partial Summary Judgment on Fiduciary Claim Related to Real Estate Broker Intermediary Failure ("Alpha's Fiduciary-Duty Response"), Docket Entry No. 45, pp. 1–2.

fiduciary relationship, which "arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers," and an informal fiduciary relationship, which "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." <u>Navigant Consulting</u>, 503 F.3d at 283.

"An agency relationship does not depend upon the express appointment or assent by the principal; rather, it may be implied from the conduct of the parties." <u>Orozco v. Sander</u>, 824 S.W.2d 555, 556 (Tex. 1992). A fiduciary relationship may exist between a commercial real estate broker and its client if the plaintiff establishes the existence of a principal-agent relationship. <u>See SJW Property Commerce, Inc. v. Southwest Pinnacle Properties, Inc.</u>, No. 13-08-00268, 2010 WL 3704928, at *1, 25 (Tex. App. — Corpus Christi Sept. 23, 2010) (holding that "the jury was reasonable in inferring that a fiduciary relationship existed between [a commercial real estate broker] and [its alleged client]") (citing <u>Orozco</u>, 824 S.W.2d at 556)).

"It is the duty of a fiduciary to deal openly, and to make full disclosure to the party with whom he stands in such relationship," and "one occupying a fiduciary relationship to another must measure his conduct by high equitable standards, and not by the standards required in dealings between ordinary

parties." <u>Kinzbach Tool Co. v. Corbett-Wallace Corp.</u>, 160 S.W.2d 509, 513 (Tex. 1942).

A plaintiff alleging breach of fiduciary duty "must bring suit . . . not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5).

## C.   Analysis

   1.   <u>Alpha's Motion</u>

      (a)   Statute of Limitations

Since the primary events giving rise to this action occurred in late 2005 and throughout 2006, and this action was filed in September of 2009, the court first concludes that Lam and Chau's fiduciary-duty causes of action were filed within the relevant statute of limitations and are therefore timely.  <u>See</u> Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (Vernon 2002).

      (b)   "Breach" Analysis

Alpha does not dispute that Alpha and Nguyen owed a fiduciary duty to Lam and Chau.  Rather, Alpha argues that just as Lam and Chau's fraud and conspiracy claims fail as a matter of law, so too do the fiduciary-duty claims predicated on those fraud and conspiracy claims.

With regard to the fraud and conspiracy claims underlying Lam and Chau's fiduciary-duty claims, the court has explained above its reasons for either denying or granting Alpha's summary-judgment

-81-

motion and for either denying or granting Lam and Chau's motion to dismiss without prejudice. The court concludes that the fiduciary-duty allegations predicated on those previously discussed fraud allegations are entitled to the same result afforded to the underlying fraud or conspiracy claims.

Therefore, the court concludes the following allegedly fraudulent representations do not, as a matter of law, serve as a basis for a claim for breach of fiduciary duty in this action and that Alpha's motion for partial summary judgment is granted (and to the extent Lam and Chau sought dismissal, their motion is denied):

(1)   that Nguyen represented she would evenly split her commission with Lam and Chau for the Beechnut property;

(2)   that Alpha represented it would provide management without compensation for the Beechnut, Longenbaugh, and W. 34th St. properties;

(3)   that Alpha represented it would maintain full occupancy at all the properties;

(4)   that Alpha represented the value of all the properties would increase under its management;

(5)   that Nguyen represented that Alpha would assist Lam and Chau in finding prospective tenants for the Beechnut property;

(6)   that Nguyen represented that at the time plaintiffs purchased the Beechnut property, Alpha had already secured pre-leases and letters of commitment;

(7)   that Alpha represented it would be able to secure a lease with T-Mobile in excess of $750 per month;

(8)   that Alpha would manage the W. 34th St. property and maintain all property-related documents;

(9) that Alpha represented that Lam and Chau would pay
no expenses for the W. 34th St. property;

(10) that Alpha represented it would find a replacement
tenant within a few months of A-1 Amusement's
departure; and

(11) that Alpha represented that the ancillary parking
lot to the W. 34th St. property was part of the
property.

The court concludes that the following fiduciary-duty claims involve genuine fact disputes and will therefore deny Alpha's motion and grant Lam and Chau's motion to voluntarily dismiss the claims: (1) that Nguyen represented she would evenly split her commission with Lam and Chau for the Bissonnet, Longenbaugh, and W. 34th St. properties; and (2) that Alpha represented it would provide management without compensation for the Bissonnet property.

The court concludes that the following fiduciary-duty claims involve genuine fact disputes and will therefore deny Alpha's motion for summary judgment, leaving the claims intact: (1) that Alpha represented it would manage the dry-cleaning business without compensation; (2) that Alpha represented that Murka's financial information was accurate; and (3) that Alpha represented the W. 34th St. property had five tenants providing annual net income of $126,128.

Lam and Chau's remaining fiduciary-duty claims, which do not rest on the above representations, are not affected by these rulings and remain intact.

-83-

2.   <u>Lam and Chau's Motion</u>

Lam and Chau argue that they are entitled to summary judgment on their claim that Nguyen and Alpha Realtors breached their fiduciary duties by failing to obtain Lam and Chau's written consent for serving as an intermediary broker and failing to disclose their intermediary status with respect to the Bissonnet, Longenbaugh, and W. 34th St. properties.[269]  Lam and Chau's argument rests on the provisions of the Texas Real Estate Licensing Act ("RELA") governing the conduct of real estate brokers in real estate transactions.  Section 1101.558 states that a licensed broker is required to provide a written statement "at the time of the first substantive dialogue" with a prospective client that outlines general information about the broker's roles and responsibilities.  Tex. Occ. Code § 1101.558(c)-(d) (Vernon 2004).  The written statement includes the following language:  "The broker must obtain the written consent of each party to the transaction to act as an intermediary."  <u>Id.</u> § 1101.558(d).  Lam and Chau also refer to Section 1101.559, which provides that a broker acting as an intermediary must "obtain written consent from each party," and the written consent must state "the source of any expected compensation to the broker."  <u>Id.</u> § 1101.559(a).

Lam and Chau argue that Nguyen and Alpha Realtors breached their fiduciary duty as a matter of law because evidence in the

---

[269]Plaintiffs' Fiduciary-Duty Motion, Docket Entry No. 39, pp. 1-2.

record shows that there were violations of RELA when Nguyen and Alpha represented Lam and Chau as their broker.  During her deposition, Nguyen stated she "did not recall" whether she gave Lam and Chau the required written statement when they came to Houston in early 2006 to look at properties.[270]  She also states that she "do[es] not recall" if she has ever talked to Lam and Chau about what it means to be an intermediary.[271]  Nguyen states, however, that her role as an "intermediary has been disclosed on all the contract[s]."[272]  Lam and Chau argue that despite not obtaining written consent, Nguyen earned a commission as the intermediary broker on Lam and Chau's "purchase of the Longenbaugh and W. 34th properties," and received "$45,000 in sales proceeds from the sale of the Bissonnet property."[273]

The court concludes that a genuine issue of material fact remains as to whether Nguyen and Alpha Realtors breached their fiduciary duty in the context of disclosing the fact that they were acting as an intermediary broker.  While the record suggests Alpha may have violated RELA, statutory violations by themselves are not breaches of fiduciary duty per se; the question of whether Nguyen

---

[270]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, p. 45:4-16.

[271]Id. at 48:2-9.

[272]Id. at 48:19-21.

[273]Plaintiffs' Fiduciary-Duty Motion, Docket Entry No. 39, p. 9.

-85-

and Alpha Realtors breached their duty, or did not conduct their business in accordance with the "high equitable standards" expected of a fiduciary, is a fact question best reserved for a jury.

## V.   Lam and Chau's Texas DTPA Claims

### A.   Background

Lam and Chau allege that Alpha Realtors and Nguyen violated provisions of the Texas DTPA by engaging in the following practices: (1) representing that some of Alpha Realtors' services had "characteristics and benefits that they did not have" (violating § 17.46(b)(5)); (2) representing that Alpha Realtors' "services were of a particular standard when they were not" (violating § 17.46(b)(7)); (3) "failing to disclose information about [Alpha Realtors'] services that was known at the time of the transaction . . . to induce Plaintiffs to enter into transactions that they would not have entered into if the information had been disclosed" (violating § 17.46(b)(24)); and (4) engaging in "unconscionable actions."[274] These alleged violations are all based on the allegedly fraudulent representations discussed above.

Alpha moves for summary judgment on all of the Texas DTPA claims, arguing that the real estate transactions at issue are expressly exempted by the DTPA because they each involved over $500,000 in consideration.[275]   Lam and Chau respond that the

---

[274]Complaint, Docket Entry No. 22, ¶ 111.

[275]Alpha's Motion, Docket Entry No. 38, ¶ 54.

transactions underlying their DTPA claims are the transactions between them and their broker (Alpha) rather than those between them and the sellers.[276]

**B.    Applicable Law**

The Texas DTPA guards consumers against "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Tex. Bus. & Com. Code § 17.46(a) (Vernon 2002 & Supp. 2007).  Its provisions "shall be liberally construed."  Id. § 17.44(a).  Exempted from the Texas DTPA, however, are causes of action "arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000."  Id. § 17.49(g).  "The purpose of this exemption is to maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the DTPA."  East Hill Marine, Inc. v. Rinker Boat Co., 229 S.W.3d 813, 820 (Tex. App. — Fort Worth 2007, pet. denied).

**C.    Analysis**

Alpha argues that Lam's deposition statements and the documents relating to the real estate transactions demonstrate that

---

[276]Plaintiffs' Response, Docket Entry No. 49, p. 25.

Lam and Chau paid over $500,000 for each property.[277]  Lam states in his deposition that he paid $600,000 for the Bissonnet property,[278] "[a]bout three million" for the Beechnut property and Beechnut Business Park,[279] $501,500 for the Longenbaugh property and dry-cleaning business,[280] and around $1,250,000 for the W. 34th St. property.[281]  The contractual documents for each transaction support these statements.[282]  But Lam and Chau counter that their DTPA cause of action is aimed at the deceptive and misleading manner in which Alpha represented them as their broker and manager, not at any misconduct on the part of the seller.[283]  Therefore, according to Lam and Chau, the relevant "consideration" is the value of Alpha Realtors' brokerage and management services, not the total amount they paid for the properties.[284]

---

[277]Alpha's Motion, Docket Entry No. 38, ¶ 54.

[278]Deposition of Tony Lam, Exhibit A to Tab 2 of Plaintiffs' Response, Docket Entry No. 49, pp. 53:18–54:1.

[279]Id. at 99:1–20.

[280]Id. at 223:1–227:2.

[281]See id. at 130:22–25, 142:6–143:4.

[282]See Bissonnet Commercial Contract, Exhibit 8 to Alpha's Motion, Docket Entry No. 38, p. 1; Beechnut Commercial Contract, Exhibit 10 to Alpha's Motion, Docket Entry No. 38, p. 1; Beechnut Standard Form of Agreement, Exhibit 15 to Alpha's Motion, Docket Entry No. 38, p. 3; Longenbaugh Settlement Statement (Lam 43), Exhibit 12 to Alpha's Motion, Docket Entry No. 38, p. 1; W. 34th St. Commercial Contract, Exhibit 11 to Alpha's Motion, Docket Entry No. 38, p. 1.

[283]Plaintiffs' Response, Docket Entry No. 49, pp. 24–25.

[284]Id.

The issue is thus whether Alpha's allegedly wrongful representations and conduct "aris[e] from" a "transaction" that "involv[ed]" Lam and Chau giving total consideration of "more than $500,000." Tex. Bus. & Com. Code § 17.49(g). Undoubtedly, Lam and Chau participated in such transactions when they purchased the Houston properties. But it is less clear whether their specific allegations against Alpha, which pertain to conduct ancillary to the real estate purchases themselves, fall within the statutory exemption and are thus precluded. Texas case law addressing the exemption is sparse.

Alpha cites to two cases in support of its argument that Lam and Chau's DTPA claims are precluded by the exemption. The first, Aluchem, Inc. v. Sherwin Alumina, L.P., 2007 WL 1100473 (S.D. Tex. Apr. 11, 2007), is an unreported case from this district that involved a supplier's allegedly wrongful conduct in association with its agreement to supply calcined alumina products to a buyer. Id. at *1. The buyer brought a Texas DTPA cause of action against the seller after the seller gave written notice it wanted to terminate the contract. Id. at *2. The court held that the claim was exempted by Section 17.49(g) because the "total consideration" paid by the buyer was for more than $500,000. Id. at *7. In reaching its conclusion, the court rejected the buyer's argument that since the amount in dispute was below the $500,000 threshold its claim should not be exempt, reasoning that "total consideration" should equal what the parties agreed ex ante, or in other words, the "contractual face[-]value price." Id. at *6-7.

-89-

The court's holding in <u>Aluchem</u> does not support Alpha's argument that the relevant transactions in this action are Lam and Chau's real estate purchases.  In <u>Aluchem</u> the total consideration was based on the value of a supply agreement, and the plaintiff was suing the party with whom it had entered that agreement.  Here, Alpha argues that the total consideration should be based on the value of the real estate contracts, even though Lam and Chau have brought suit not against the party with whom it contracted (the sellers), but against the party who helped find the properties and who represented they would manage the properties.

Alpha also refers to <u>Landscape Design & Constr., Inc. v. Transp. Leasing/Contract, Inc.</u>, 2002 WL 257573 (N.D. Tex. 2002), which involved a buyer suing a service provider with whom it had entered an agreement, alleging the service provider was concealing the fact that it was not complying with the terms of the agreement. <u>Id.</u> at *1-2.  The three plaintiffs, all companies, had entered into client-service agreements with the defendant supplier pursuant to which the defendant supplied employment staff to the companies in exchange for compensation.  <u>Id.</u> at *1.  The plaintiff alleged the supplier concealed the fact that it was marking up the cost associated with providing the employees.  <u>Id.</u> at *2.  The court granted the defendant's motion for summary judgment even though the plaintiff argued that the "amount of total indebtedness" was under $300,000.  <u>Id.</u> at *10; <u>see also</u> <u>East Hill Marine, Inc. v. Rinker</u>

Boat Co., 229 S.W.3d 813, 821 (Tex. App. — Fort Worth 2007, no
pet.) (affirming summary judgment and finding that a boat-
dealership plaintiff's Texas DTPA claim was exempt because the
value of the contract between the parties was over $800,000). Just
as in Aluchem, the court did not base its determination of "total
consideration" on the amount merely in dispute.

Landscape, like Aluchem, involved a plaintiff suing the party
with whom it had entered into an agreement, and the determination
of the total consideration was based on the initial agreement
between those parties. Here, Lam and Chau have indeed brought this
action against parties with whom they allege they entered an
agreement, but the "agreements" at issue are the brokerage and
management agreements rather than the property-acquisition
agreements. The only evidence in the record of the value of the
consideration Lam and Chau transferred to Alpha for its services
are the commissions and management fees, and the record does not
show, nor does Alpha argue, that these amounts, even all together,
are over $500,000.

In addition, the plaintiffs in the cases described above were
all business entities, unlike Lam, who despite having experience as
a businessman was unfamiliar with the Houston real estate market.
If the purpose of the exemption is to "remove litigation between
businesses over large transactions," Lam and Chau's claim is better
placed outside the scope of the exemption.

-91-

The court concludes that the exemption for causes of action arising from transactions involving more than $500,000 does not preclude Lam and Chau's Texas DTPA claim. Because Alpha offers no other argument in support of summary judgment on the DTPA claim, its motion will be denied.

## VI.  **Lam and Chau's Texas Property Code Claim**

### A.  **Background**

Lam and Chau allege that Alpha violated Chapter 62 of the Texas Property Code when Nguyen, without a proper basis, "made, presented, and used an Affidavit to File a Real Estate Broker Lien" for the Broadway, Bissonnet, and W. 34th St. properties in the amount of $11,476.21.[285] Lam and Chau move for summary judgment on this claim only as to Alpha's liability and not as to damages, arguing that by (1) filing for a broker's lien on the Broadway and W. 34th St. properties even though they did not have a written commission agreement with Lam and Chau, and (2) failing to provide a copy of the broker's lien to Lam and Chau within the statutory time period, they are entitled as a matter of law to have the liens released and are entitled to judgment as to Alpha's liability.[286] Alpha responds that the purpose of the broker's lien was merely to

---

[285]Complaint, Docket Entry No. 22, ¶¶ 103-07.

[286]Plaintiffs' Chapter 62 Motion, Docket Entry No. 40, pp. 1-2.

enforce the payment owed to Alpha Realtors pursuant to the management agreement to which both parties agreed.[287]

## B. Applicable Law

A real estate broker is entitled to a lien on a seller's commercial real estate interest in the amount specified by the commission agreement if (1) the broker has earned a commission under a commission agreement signed by the seller and (2) a notice of lien is recorded and indexed as provided by Section 62.024 of the Texas Property Code. Tex. Prop. Code Ann. § 662.021(a) (Vernon 2007). For the notice of lien to be valid, it must be recorded "after the commission is earned" and "before the conveyance of the commercial real estate interest on which the broker is claiming a lien." Id. § 62.041(a). Once the notice of lien is filed with the county clerk, the broker "shall mail a copy of the notice of lien" not later than one business day after the date of filing to the owner of the real estate interest. Id. §§ 62.024(b), 62.026(a)-(b)(1). If the broker fails to comply with the notice requirements, the "notice of lien is void," which means the broker no longer has a lien. Id. § 62.026(f); see also id. § 62.021(a)(2). A broker whose notice of lien is void (i.e., failed to comply with the notice requirements) "shall furnish to the owner a release of indebtedness and any lien claimed" no later

---

[287]Alpha Realtors, Inc. and Jane Nguyen's Response to Plaintiffs' Motion for Partial Summary Judgment on Chapter 62 Claim ("Alpha's Chapter 62 Response"), Docket Entry No. 44, p. 5.

than five days after the broker receives a written request from the owner.  Id. § 62.081(a).

An owner may file suit against a broker under the Texas Property Code.  Id. § 62.141(a).  If the owner establishes that the broker "failed to mail a copy of the notice of lien" within one business day or "failed to release a lien" within five days after a proper request, "the court shall discharge a broker's lien."  Id. § 62.141(b).  A broker may also be liable to the owner for damages if:  (1) the broker recorded a lien, (2) the broker failed to release a lien within five days after an owner properly requested a release, (3) the owner mailed to the broker a copy of the statute and a notice requesting the broker to release the lien no later than ten days after receipt of the request, and (4) the broker failed to comply with the owner's written notice within the prescribed period.  Id. § 62.141(c).

## C.  Analysis

The record shows that Nguyen filed an "Affidavit to File a Real Estate Broker Lien" in Harris County with respect to the Broadway, Bissonnet, and W. 34th St. properties on January 16, 2009.[288]   Under Section 62.026 of the Property Code, Nguyen therefore was required to mail a copy of the affidavit by certified mail, return receipt requested, or registered mail no later than

---

[288]Lien Affidavit, Exhibit 2 to Plaintiffs' Chapter 62 Motion, Docket Entry No. 40, p. 1.; Affidavit of Tony Lam, Exhibit 1 to Plaintiffs' Chapter 62 Motion, Docket Entry No. 40, ¶ 2.

within one business day. See Tex. Prop. Code Ann.
¶ 62.026(a)-(b)(1). Lam states that he never received a copy of
the notice of lien.[289] Nguyen confirms this in her deposition when
she testified that she gave notice to Lam by telephone within one
business day but "know[s]" Alpha did not send written notice.[290]

The record also shows that on September 6, 2009, Lam and Chau
submitted a demand to Alpha via certified mail (return receipt
requested), along with a copy of the relevant statute, asking that
Alpha Realtors release the lien within ten days of receiving the
demand.[291] Alpha does not dispute that it received the demand,[292]
and it acknowledges that the liens were still in place as of
September 7, 2010, when Alpha responded to the summary-judgment
motion.[293]

Because Lam and Chau have established that there is no genuine
dispute that Nguyen and Alpha Realtors failed to mail a copy of a
notice of lien within one business day of filing and failed to
release the lien within five days of receiving a proper request,

---

[289]Affidavit of Tony Lam, Exhibit 1 to Plaintiffs' Chapter 62
Motion, Docket Entry No. 40, ¶ 2.

[290]Deposition of Jane Nguyen, Exhibit B to Tab 2 of Plaintiffs'
Response, Docket Entry No. 49, p. 59:1-14.

[291]Letter from Lam to Nguyen, Exhibit 4A to Plaintiffs'
Chapter 62 Motion, Docket Entry No. 40, p. 1.

[292]Alpha Defendants' Answer, Docket Entry No. 28, ¶ 47.

[293]See Alpha's Chapter 62 Response, Docket Entry No. 44, p. 6
("Alpha and Nguyen therefore do not object to the Court's discharge
of the lien as requested in Section C(2) of Plaintiffs' Motion.").

the court will order that the lien be discharged and released pursuant to Texas Property Code Section 62.041.

In addition, Lam and Chau have established that there is no genuine dispute as to the following material facts: (1) that Alpha recorded a broker's lien, (2) that Alpha failed to release the lien within the period prescribed by Section 62.081 (they had five days after receiving Lam and Chau's written request since the lien had already been "rendered void" under Section 62.026 (*i.e.*, the requirement that the notice of filing be sent by mail to the owner)), (3) that Lam and Chau mailed Alpha by certified mail (return receipt requested) a copy of Section 62.141 and a notice requesting Alpha to release the lien within ten days of receipt of the notice, and (4) that Alpha failed to comply with Lam and Chau's written notice.  As a result, the court concludes that Alpha is liable to Lam and Chau for damages as a matter of law under Section 62.141(c) of the Texas Property Code.

**D.   Conclusion**

The court concludes that because there is no genuine dispute about any material facts, the broker's lien should be discharged and released, and Lam and Chau are entitled to summary judgment as to their claim that Alpha is liable under Section 62.141(b) and (c) of the Texas Property Code.

### VII.   __Alpha's Breach-of-Contract Counterclaim__

**A.   Background**

Alpha alleges that Lam and Chau breached the management agreements pertaining to the Broadway, Bissonnet, Longenbaugh, and W. 34th St. properties by failing to pay Alpha management fees for its services.[294]

Lam and Chau move for partial summary judgment with respect to the Broadway, Longenbaugh, and W. 34th St. agreements, arguing that the claims fail because all three are oral agreements and thus violate the statute of frauds.[295]   They assert that the only property for which a written management agreement exists is the Bissonnet property.[296]

Alpha first responds by referring the court to the parties' signed management agreement for the Broadway property.[297]   Second, Alpha argues that the statute-of-frauds provision Lam and Chau rely on concerns commissions, not property-management fees.[298]   Finally, Alpha argues that with respect to the Longenbaugh and W. 34th St. properties, Nguyen and Alpha Realtors managed the properties pursuant to an oral agreement.[299]

---

[294]Alpha's Answer, Docket Entry No. 27, pp. 27-31.

[295]Plaintiffs' Chapter 62 Motion, Docket Entry No. 40, p. 10.

[296]Id.

[297]Alpha's Chapter 62 Response, Docket Entry No. 44, p. 2.

[298]Id.

[299]Id.

**B.   Applicable Law**

In Texas the elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach.  <u>Wright v. Christian & Smith</u>, 950 S.W.2d 411, 412 (Tex. App. — Houston [1st Dist.] 1997, no writ).   Certain types of promises or agreements are "not enforceable" unless they are "in writing" and "signed by the person to be charged with the promise or agreement," including a "contract for the sale of real estate" and a "lease of real estate for a term longer than one year."  Tex. Bus. & Com. Code Ann. § 26.01(a)-(b).

**C.   Analysis**

1.   <u>Broadway Property</u>

Since the record includes a copy of a written management agreement between Lam and Chau and Alpha for the Broadway property,[300] the court will deny Lam and Chau's motion to the extent it seeks summary judgment with regard to the Broadway agreement.

2.   <u>Longenbaugh and W. 34th St. Properties</u>

Lam and Chau argue that Section 1101.806 of the Texas Property Code mandates that a broker is prohibited from bringing suit to

---

[300]Broadway Management Agreement, Exhibit 13 to Alpha's Motion, Docket Entry No. 38.

recover certain fees associated with managing a property unless the agreement is in writing.[301]   That section, however, provides that "[a] person may not maintain an action in this state to recover a *commission for the sale or purchase of real estate* unless the promise or agreement on which the action is based . . . is in writing and signed by the party against whom the action is brought."   Tex. Prop. Code Ann. § 1101.806(d) (Vernon 2004) (emphasis added).   Alpha refers to the plain language of the statute in arguing that it does not apply to a broker's collection of unpaid management fees pursuant to an oral management agreement.[302]

Lam and Chau argue in reply that the phrase in Section 1101.806, "commission for the sale or purchase of real estate," encompasses fees a broker collects when he or she leases the owner's property to new tenants.   According to Lam and Chau, since Alpha Realtors seeks fees for securing "new tenant leases," the claim for such fees fails as a violation of the statute of frauds.[303]   In support of their argument, Lam and Chau refer to Section 1101.002 of RELA, which states that the term "broker" means, among other things, "a person who, in exchange for a commission or other valuable consideration . . . sells, exchanges,

---

[301]Plaintiffs' Chapter 62 Motion, Docket Entry No. 40, p. 10.

[302]Alpha's Chapter 62 Response, Docket Entry No. 44, p. 7.

[303]Plaintiffs' Reply Brief in Support of Motion for Partial Summary Judgment on Chapter 62 Claim, Docket Entry No. 54, pp. 4-5.

purchases, or leases real estate." Tex. Occ. Code Ann.
§ 1101.002(1)(A)(i).

Texas case law supports the conclusion that commission
agreements (and therefore "management" agreements that include
broker commissions) relating to the leasing of real estate must
comport with the statute of frauds as set out in Section 1101.806.
See, e.g., Duncan v. F-Star Mgmt., L.L.C., 281 S.W.3d 474, 478-79
(Tex. App. — El Paso 2008, pet. filed) (holding that a plaintiff
was unable to collect a commission for leasing a property because
the agreement violated the statute of frauds); Carmack v. Beltway
Development Co., 701 S.W.2d 37, 39 (Tex. App. — Dallas 1985, no
writ) (interpreting the predecessor statute to Section 1101.806 and
explaining that "[a] lease transaction is a 'sale'" within the
meaning of the phrase "commission for the sale or purchase of real
estate").

Alpha argues that it seeks to recover commercial-property
management fees, which it acknowledges are based on "a fixed
percentage of gross monthly rents, new tenant leases, service fees,
interest on trust accounts, and administrative fees."[304] Moreover,
the written Bissonnet Management Agreement, the terms of which
Alpha alleges also govern the Longenbaugh and W. 34th St.
properties, provides that "[e]ach time the Property is leased to a

---

[304]Alpha's Chapter 62 Response, Docket Entry No. 44, pp. 7-8.

new tenant, [Lam and Chau] will pay [Alpha] a leasing fee equal to 5.000% of the gross to be paid under the lease."[305]

In accordance with Texas statute and Texas case law, Lam and Chau are entitled to judgment as a matter of law as to the "fees" based on "new tenant leases" for the oral agreements governing the Longenbaugh and W. 34th St. properties.  Whether Lam and Chau are liable for the other allegedly unpaid management fees presents a genuine fact issue.  Accordingly, Lam and Chau's motion for summary judgment with respect to the Longenbaugh and W. 34th St. breach-of-contract claims is denied except for the portion of Alpha's claim seeking recovery for the leasing fees.

**D.   Conclusion**

As explained in Section C(1), with respect to the Broadway property, Lam and Chau's motion is denied because of the existence of the Broadway management agreement.

As explained in Section C(2), with respect to the Longenbaugh and W. 34th St. properties, because brokers' commission agreements for the leasing of real estate must be in writing, the court concludes that (1) Lam and Chau's motion will be granted to the extent it seeks summary judgment on Alpha's breach-of-contract counterclaim alleging it has not been paid leasing fees; and (2) Lam and Chau's motion will be denied as to the non-leasing-fee portions of the counterclaim.

---

[305]Bissonnet Management Agreement, Exhibit C to Tab 1 of Plaintiffs' Response, Docket Entry No. 49, p. 5.

### VIII.   <u>Conclusion and Order</u>

For the reasons explained above, the court concludes that Alpha Defendants' Motion for Partial Summary Judgment (Docket Entry No. 38) is **DENIED in part** and **GRANTED in part**; Plaintiffs' Motion for Partial Summary Judgment on Fiduciary Claim Related to Real Estate Broker Intermediary Failure (Docket Entry No. 39) is **DENIED**; Plaintiffs' Motion for Partial Summary Judgment on Chapter 62 Claim [and on Alpha's Counterclaim for Breach of Contract] (Docket Entry No. 40) is **DENIED in part** and **GRANTED in part**; and Plaintiffs' Motion for Voluntary Dismissal of Certain Claims Against Alpha Defendants Without Prejudice (Docket Entry No. 59) is **DENIED in part** and **GRANTED in part**.[306]

**A.   A summary of the status of each claim in Lam and Chau's Complaint in light of the court's rulings is provided below:**

<u>Count One – Breach of the Bissonnet Management Agreement</u>

• Remains in its entirety.

---

[306]The parties have submitted very thorough and well-written briefs in connection with the pending motions.  As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these briefs and exhibits and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion.  Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.

Count Two – Common Law and Statutory Fraud

- For the portion of the fraud claim resting on the alleged representation that Nguyen and Alpha would split its commission with Lam and Chau, (1) Lam and Chau's motion to dismiss without prejudice is granted with respect to the Bissonnet, Longenbaugh, and W. 34th St. properties, and (2) Alpha's summary-judgment motion is granted with respect to the Beechnut property.
- For the portion of the fraud claim resting on the alleged representation that Nguyen and Alpha would manage the properties at no charge for five years, (1) Lam and Chau's motion to dismiss without prejudice is granted with respect to the Bissonnet property, and (2) Alpha's summary-judgment motion is granted with respect to the Beechnut, Longenbaugh, and W. 34th St. properties.

- For the portion of the fraud claim resting on the alleged representation that Nguyen and Alpha would maintain full occupancy at the properties, Alpha's summary-judgment motion is granted with respect to the Bissonnet, Beechnut, Longenbaugh, and W. 34th St. properties.

- For the portion of the fraud claim resting on the alleged representation that the value of the properties would increase under Nguyen and Alpha's management, Alpha's summary-judgment motion is granted with respect to the Bissonnet, Beechnut, Longenbaugh, and W. 34th St. properties.

Count Three – Common Law and Statutory Fraud

- For the portion of the fraud claim resting on the alleged representation that Nguyen and Alpha would assist in finding prospective tenants for the Beechnut property, Alpha's summary-judgment motion is granted.

- For the portion of the fraud claim resting on the alleged representation that at the time of the Beechnut acquisition, Nguyen and Alpha had already secured pre-leases and letters of commitment from several prospective tenants, Alpha's summary-judgment motion is granted.

Count Four – Civil Conspiracy to Commit Common Law and Statutory Fraud

- Alpha's summary-judgment motion is granted.

-103-

Count Five – Common Law and Statutory Fraud

- The portion of the fraud claim resting on the alleged representation that Nguyen would manage the dry-cleaning business at the Longenbaugh property for free remains.

- The portion of the fraud claim resting on the alleged representation that Murka's financial information was accurate and that Lam and Chau would enjoy an average monthly net income of $5,000 at the Longenbaugh property remains.

- For the portion of the fraud claim resting on the alleged representation that Lam and Chau would be able to secure a cell-phone tower lease for over $750 a month at the Longenbaugh property, Alpha's summary-judgment motion is granted.

Count Six – Common Law and Statutory Fraud

- For the portion of the fraud claim resting on the alleged representation that Nguyen and Alpha would manage the W. 34th St. property and maintain all related documents, Alpha's summary-judgment motion is granted.

- The portion of the fraud claim resting on the alleged representation that five tenants occupied the W. 34th St. property producing annual net income of $126,828 remains, but Alpha's summary-judgment motion is granted as to the alleged representation that there would be zero expenses.

- For the portion of the fraud claim resting on the alleged representation that Nguyen and Alpha would find a replacement tenant for the W. 34th St. property within a few months of A-1 Amusement's departure, Alpha's summary-judgment motion is granted.

- For the portion of the fraud claim resting on the alleged representation that the parking lot ancillary to the W. 34th St. property was part of the property, Alpha's summary-judgment motion is granted.

Count Seven – Violations of Chapter 12 of the Texas Civil Practice & Remedies Code

- Remains in its entirety.

-104-

<u>Count Eight – Violations of the Texas Deceptive Trade Practices Act</u>

• Remains in its entirety.

<u>Count Nine – Breach of Fiduciary Duty</u>

• For any fiduciary-duty claim based on an allegedly fraudulent representation discussed above, the result is the same as the result as to the representation.

• Lam and Chau's summary-judgment motion with respect to Alpha's alleged failure to disclose its status as an intermediary broker is denied, and the claim remains.

• All other alleged fiduciary-duty claims remain.

<u>Count Ten – Violations of Chapter 62 of the Texas Property Code</u>

• Lam and Chau's summary-judgment motion is granted, and the court will order that the broker's lien be discharged and released.

**B.   A summary of the status of each claim in Alpha's Counterclaim in light of the court's rulings is provided below:**

<u>Count One – Breach of the Bissonnet Management Agreement</u>

• Remains in its entirety.

<u>Count Two – Breach of the Broadway Management Agreement</u>

• Lam and Chau's summary-judgment motion is denied, and the claim remains.

<u>Count Three – Breach of the W. 34th St. Management Agreement</u>

• For the portion of the counterclaim seeking unpaid leasing fees, Lam and Chau's summary-judgment motion is granted.

• For all other portions of the counterclaim, the claim remains.

<u>Count Four – Breach of the Longenbaugh Management Agreement</u>

- For the portion of the counterclaim seeking unpaid leasing fees, Lam and Chau's summary-judgment motion is granted.

- For all other portions of the counterclaim, the claim remains.

<u>Count Five – Attorney's Fees and Costs</u>

- Remains in its entirety.

The court concludes that this case is appropriate for mediation. If the parties are unable to settle the case within the next thirty days, they will provide the court with the name, address, telephone number, and fax number of an agreed-upon mediator. Paragraphs 10 and 11 of the Docket Control Order (Docket Entry No. 24) are **VACATED.**

The court **ORDERS** that Nguyen and Alpha Realtors' broker's lien for the Broadway, Bissonnet, and W. 34th St. properties is **DISCHARGED** and **RELEASED.**

**SIGNED** at Houston, Texas, on this 4th day of November, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE